[Crim. No. 33930. Second Dist., Div. Four. Nov. 6, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
THEODORE EARL THOMPSON, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Stanley Avram Goldman, Acting Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**JEFFERSON (Bernard), J.**—By an amended information, defendant was charged in count I with a violation of Penal Code section 288a, subdivision (b) (2), a felony. It was alleged in count I that defendant committed this offense on or about May 8, 1977, by being over the age of 21 years and participating in an act of oral copulation with Fred V., a person under the age of 16. In count II, it was alleged that, on the same date, defendant committed the offense of a violation of Health and Safety Code section 11361, subdivision (a), a felony, by furnishing marijuana to Fred V., a minor. In count III, it was alleged that defendant committed the offense of a violation of Health and Safety Code section 11361, subdivision (a), a felony, by furnishing marijuana to Fred V., a minor, on or between September 1, 1976, and September 30, 1976.

Defendant made a motion to set aside the information pursuant to the provisions of section 995 of the Penal Code. The motion was granted as to count III and that count was dismissed. Defendant was tried by a jury with respect to counts I and II. The jury found defendant guilty as charged in count II. The court made a finding that the jury was hopelessly deadlocked with respect to count I and declared a mistrial as to that count. With respect to count II, proceedings were suspended and defendant was placed on probation for a period of three years subject to specified terms and conditions. On motion of the People, count I was dismissed in furtherance of justice. Defendant has appealed from the judgment of conviction.

## I

## THE FACTUAL BACKGROUND

Fred V., the alleged victim in the case at bench, testified that he had met defendant several months prior to the date of May 8, 1977, the date upon which the two offenses were allegedly committed. Fred indicated that he had met defendant at an apartment house where defendant originally resided. Fred had gone to this apartment house with several of his friends to use the swimming pool there. The use of the pool was without permission of any of the tenants of the building. On May 8, 1977, Fred was 15 years of age and defendant was a young man about 27 years of age.

On the date in question, May 8, 1977, Fred said that defendant had invited him to come to his apartment at a different apartment building to which defendant had moved; that defendant picked him up at the location of the old apartment building and drove him to the new apartment. Fred testified that, after his arrival at defendant's apartment, he had something to drink and smoked two joints of marijuana cigarettes which defendant provided. The time of arrival at defendant's apartment was in the area of 7 p.m. The drink which Fred said he had was Southern Comfort and Coke. Fred testified that the smoking of the marijuana came about after defendant said that he had some high grade marijuana and wanted to know if Fred wanted to smoke a marijuana cigarette with him. Fred said they smoked the first cigarette, talked for a while, and then Fred smoked a part of a second cigarette. Fred testified that he had become familiar with marijuana before meeting defendant and had been using it for about six months before he met defendant, but not on a daily basis.

Fred indicated he became drowsy, tired and sleepy after smoking the second marijuana cigarette. Fred testified that defendant started fondling him in the crotch area while he still had his clothes on; that defendant then led him into the bedroom, where defendant first took off Fred's clothes and then his own. Fred testified to acts of masturbation and oral copulation committed by defendant. When these acts were finished, Fred said that they got dressed and the defendant then drove him back to his home where he was living with his family. Several days later Fred told a friend about what had happened and ended up going to the police.

Defendant testified in his own behalf. Defendant admitted meeting Fred at the old apartment building where Fred and his friends were using the swimming pool without permission. Defendant stated that a few days preceding May 8, 1977, Fred had called him by phone and had desired to come over and talk with defendant about a matter but defendant informed him he was busy and Fred asked if he could come over at a later time; defendant advised Fred that this would be acceptable. On May 8, defendent said he received a telephone call from Fred about 2 p.m.; that Fred wanted to come over at that time. Defendant said that he advised Fred that he was busy but would be available for Fred to come over later in the day. Later that afternoon defendant said that Fred called and indicated he wanted to come over around 7 p.m.; that Fred asked defendant to pick him up about 7 at defendant's old apartment building. Defendant said that he drove his car to his old apartment building, met Fred there, and brought him back to defendant's apartment.

Defendant's version of what took place in defendant's apartment was completely contrary to the version presented by Fred. Defendant said that the two engaged in conversation while defendant was busy getting ready for the next day—getting papers together for his regular job and things needed for his attendance at a hockey clinic after work. During this period of time, Fred was sitting in a chair looking at magazines and listening to music. At some point defendant told Fred he was going to walk down the street to a delicatessen to pick up some cheese and Coca Cola. Fred did not wish to go and remained in the apartment while defendant made the walking trip to the delicatessen. When defendant returned to his apartment, Fred indicated that he wanted to go home. Defendant then drove Fred home, returned to his apartment, showered and went to bed.

Defendant related that, before retiring, he went to a jewelry box where he had put approximately $125 in cash. He intended getting some of this money for use the next day. All of the money was missing. Defendant considered that Fred had taken the money and he decided to confront him about this. Defendant telephoned Fred the next day, May 9, but did not complete the telephone conversation as Fred said he would have to get back to defendant later. Fred then hung up the phone. Defendant also testified that he subsequently discovered that some marijuana cigarettes which he had in the apartment were missing. Defendant denied providing any hard liquor to Fred on the May 8 occasion and denied providing Fred with any marijuana cigarettes on the

May 8 occasion. Defendant also denied making any sexual advances toward Fred on this occasion.

Other witnesses testified for the prosecution and for the defense, but no such witness saw the defendant and Fred together either in defendant's apartment on May 8 or coming to the apartment or leaving the apartment on this date.

## II

### THE QUESTION OF WHETHER EVIDENCE THAT DEFENDANT SUPPLIED THE VICTIM AND ANOTHER MINOR WITH MARIJUANA ON OTHER OCCASIONS IS ADMISSIBLE TO SUPPORT THE VICTIM'S CREDIBILITY AS A WITNESS

■ Defendant asserts two errors of the same nature in seeking a reversal of the judgment of conviction. He contends that the trial judge committed reversible error in permitting Fred to testify that, on several dates prior to May 8, 1977, Fred had visited defendant at the latter's apartment and had been provided marijuana cigarettes by defendant and had smoked these cigarettes at defendant's apartment on these prior occasions. Defendant asserts that the trial judge made an equally erroneous ruling in permitting another minor, Jane M., to testify that, on some of these prior occasions, she had been with Fred at defendant's apartment and saw defendant provide Fred with marijuana cigarettes which Fred smoked and that, on one of these occasions, at defendant's invitation, she had taken a puff on a marijuana cigarette provided by defendant.

Prior to the admission of this testimony by Fred and Jane with respect to defendant's conduct on several occasions prior to May 8, defendant had made an objection to this prospective testimony. The trial court overruled the objection and stated that the prosecution would be permitted to elicit this testimony on the theory that it was admissible to support Fred's credibility as a witness.

After permitting the prosecution to elicit similar testimony from Jane, the trial judge then stated to the jury: "Ladies and gentlemen of the jury, the testimony of this witness, in its entirety, has been received in evidence for a limited purpose. That purpose is the effect it may have, in your opinion, on the credibility of the testimony of the witness Fred [last name omitted from original]." [¶] You are reminded that the defendant here is not on trial for any offense other than the matters on May 8th, 1977, which have been previously explained to you in detail. [¶] He is not on trial for any other offense. . . .'

In its instructions to the jury at the conclusion of the evidence and arguments, the court gave a modification of CALJIC instruction No. 2.50 (1977 revision), reading as follows: "Evidence has been received tending to show that the defendant committed a crime other than that for which he is on trial. [¶] Such evidence was not received and may not be considered by you to prove that he is a person of bad character or that he has a disposition to commit crimes. [¶] Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to show one or more of the following: [¶] For whatever evidentiary value it may have in your opinion regarding the credibility of the witness Fred [last name omitted from original]. [¶] For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in the case. [¶] You are not permitted to consider such evidence for any other purpose."

It is clear that the trial court's ruling admitting the testimony of Fred, the minor victim, and of Jane, the minor victim's friend, also a minor, regarding defendant's furnishing of marijuana to them on several occasions prior to May 8, was based on *only one ground*—that such evidence was relevant to support the credibility of Fred, the victim, with respect to his testimony relating to defendant's alleged acts on *May 8*.

Accordingly, we limit our discussion to the one significant evidentiary point involved in the case at bench.

We start with a recognition that the question of the admissibility of evidence that defendant committed acts of misconduct on occasions other than the occasion of the offense charged against him still presents one of the most troublesome and unsettled features that we face today in the field of criminal evidence. We analyze first the various statutory provisions relating to this problem set forth in the Evidence Code.

Evidence Code section 1101, subdivision (a), provides generally that evidence which establishes a person's character or trait of character, such as evidence that a person has committed crimes or acts of misconduct on certain occasions, is inadmissible when offered to prove his conduct on a *specified* occasion. However, subdivision (b) of Evidence Code section 1101 provides for the admissibility of character trait evidence in the form of evidence of wrongful acts or crimes committed by a person on various occasions if such evidence is relevant to prove some fact *other than* such person's disposition or propensity to commit such

acts. The nature of these other facts—as relevant facts to be proved apart from the fact of the person's propensity or disposition to commit such criminal acts—is not described in subdivision (b) of Evidence Code section 1101 except by way of illustrations "such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"; such a listing is obviously not intended to be all-inclusive.

Whenever the prosecution seeks to introduce evidence that a defendant in a criminal case committed crimes or other acts of misconduct on occasions other than the occasion of the offense for which defendant is on trial—whether such other crimes be committed with the same or other victims—the serious issue is presented of whether such evidence comes within the framework of Evidence Code section 1101, subdivision (b), as having a relevancy to prove some fact other than defendant's propensity or disposition to commit such criminal acts.

In the case at bench, the trial judge admitted evidence from the lips of the victim, Fred, and from the minor, Jane, that defendant had furnished marijuana to both on several occasions prior to May 8, the date of the alleged offenses for which defendant was on trial, on the theory that this evidence was relevant to prove a fact other than the fact of defendant's disposition or propensity to commit such acts. The other relevant fact was considered to be a fact that supported the credibility of the victim, Fred. The question of Fred's credibility as a witness related to the truthfulness, or lack thereof, of his testimony that, on May 8, defendant had committed the two offenses charged of sexual misconduct and supplying Fred with marijuana.

This prior-occasion evidence is obviously relevant to prove defendant's propensity or character trait for furnishing marijuana to minors, from which an inference may be drawn that, on May 8, the date in question, defendant acted in conformity with his character trait and furnished the minor Fred with marijuana. But this is the very relevancy and use of such evidence that is prohibited by Evidence Code section 1101. The People seek to justify the admissibility of this prior-occasion evidence on the theory accepted by the trial court—that it was relevant to prove a support-of-credibility fact in addition to the state-of-mind or state-of-emotion fact of defendant's disposition or propensity to commit criminal acts of supplying minors with marijuana. If such evidence does have a relevancy to support a witness' credibility in addition to being relevant to establish defendant's propensity to commit such criminal acts, the trier of fact could conclude from such evidence that Fred's tes-

timony with respect to defendant's commission of the criminal acts testified to as occurring on May 8, was truthful testimony and should be believed. By accepting the truthfulness of Fred's testimony regarding the events of May 8, the jury would, of necessity, be required to reject defendant's testimony as to the events of May 8 as being untruthful.

■ Can evidence that a defendant committed criminal acts on occasions other than the occasion charged against him be considered as relevant to prove a fact supporting the credibility of a witness, and thus come within the exception provided by Evidence Code section 1101, subdivision (b), which admits such evidence to prove a fact which has a relevancy apart from the fact of defendant's propensity to commit such criminal acts?

The Law Revision Commission's comment to Evidence Code section 1101 points out that this section is not intended to refer to character-trait evidence offered to prove a fact relating to credibility of a witness: "Nor is Section 1101 concerned with evidence of character offered on the issue of the credibility of a witness; the admissibility of such evidence is determined under Sections 786-790." The quoted Law . _vision Commission's comment to Evidence Code section 1101 points out unmistakably that the admissibility of character-trait evidence on the issue of credibility of a witness is governed by Evidence Code sections 786 to 790 and not by section 1101.

■ We turn now to an analysis of Evidence Code sections 786 to 790 which govern the admissibility of character-trait evidence to attack and support the credibility of a witness.

Evidence Code section 786 provides that evidence relating to the character of a witness for the purpose of affecting his credibility is limited to the character traits of dishonesty and untruthfulness to attack credibility and to the opposite character traits of honesty and truthfulness to support the witness' credibility. These are the character traits which necessarily are involved in properly determining credibility. Other character traits are not sufficiently probative of a witness' honesty or truthfulness to warrant consideration on the issue of credibility.

But even with respect to these four character traits, Evidence Code section 787 precludes the admissibility of evidence of specific instances of a witness' conduct to establish these four character traits, with the exception of the specific conduct of a prior felony conviction which is

made admissible to attack the credibility of a witness by Evidence Code section 788.

Evidence Code section 790 provides that evidence of the good character of a witness is inadmissible to support his credibility unless evidence of his bad character has been admitted first to attack his credibility.[1] As the Law Revision Commission's comment to section 790 sets forth, "[u]nless the credibility of a witness is put in issue by an attack impugning his character for honesty or veracity (see Section 786), evidence of the witness' good character admitted merely to support his credibility introduces collateral material that is unnecessary to a proper determination of any legitimate issue in the action."

Whenever two witnesses, such as Fred, the alleged victim, and the defendant in the case at bench, tell completely conflicting stories as to whether the offenses charged were committed or not on the date in question, the credibility of each becomes the most crucial issue involved in the case. It is obvious that the testimony of Fred and Jane regarding defendant's criminal acts on prior occasions of supplying marijuana to the two of them would be inadmissible to attack the credibility of *defendant* as a witness. The proscription would arise by reason of Evidence Code sections 786 and 787, which limit character trait evidence to attack credibility to the two character traits of dishonesty or untruthfulness and, even if these two character traits are involved, proof cannot be made by evidence of specific instances of conduct. Certainly the conflicting testimony of Fred and defendant with respect to the events on May 8, constitutes an attack by each upon the credibility of the other as a witness. The question remains, however, of making a determination of whether the acts of misconduct by defendant—which are inadmissible to attack defendant's credibility as a witness—can be admitted to support the credibility of Fred as a witness.

We turn, for some guidance, to a consideration of Evidence Code section 780, which provides, in pertinent part for our purposes, that "*[e]xcept as otherwise provided by statute,* the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, ..." (Italics added.) Section 780 then lists a variety of items which are the most commonly found factors offered to affect the credibility of a witness. None of the specific factors set forth in section

---

[1]Evidence Code section 789, with which we need not be concerned, provides: "Evidence of his religious belief or lack thereof is inadmissible to attack or support the credibility of a witness."

780 includes the factor that a witness' credibility is supported by evidence from such witness or from others that, on prior occasions, events occurred similar to those which the witness testifies occurred on the occasion at issue in the current action.

To accept the reasoning that the testimony of witnesses that certain events took place on other occasions not in issue in the instant case, but which are similar to the events testified to by a witness in the instant case, supports the credibility of that witness with respect to his testimony as to the events in the instant case, is simply to ignore the proscription set forth in Evidence Code section 787, since such evidence is being offered to establish *that* witness' character trait for truthfulness by specific instances of his conduct on the other occasions. In addition, the assumption must first be made that the witness or witnesses were telling the truth with respect to the events testified to as having occurred on the prior occasions.

Evidence Code section 780 cannot be used to justify the admissibility of such evidence to support the credibility of a witness, since the provisions of section 780 are subject to the exception that statutory provisions to the contrary preclude the application of section 780, and Evidence Code section 787 is such a statute.

The decisional law has not adequately addressed this problem of how evidence that defendant committed prior acts of misconduct with the victim or with others similarly situated can avoid the prohibition of Evidence Code section 1101 against such disposition or propensity evidence by having a separate relevancy to prove a *credibility fact* that supports the credibility of the victim as a witness, or how such evidence evades the application of Evidence Code sections 780 and 787. We turn first to *People v. Thomas* (1978) 20 Cal.3d 457 [143 Cal.Rptr. 215, 573 P.2d 433]. The *Thomas* court starts with a discussion of the general rule of inadmissibility of such evidence under Evidence Code section 1101 when such evidence is offered solely to prove a defendant's criminal propensity or disposition. The *Thomas* court points out that "the purposes of the foregoing exclusionary rule are threefold: (1) to avoid placing the accused in a position in which he must defend against uncharged offenses, (2) to guard against the probability that evidence of such uncharged acts would prejudice defendant in the minds of the jurors, and (3) to promote judicial efficiency by restricting proof of extraneous crimes." (*Thomas, supra,* 20 Cal.3d 457, 464.)

Then *Thomas* observes that there are exceptions to this general rule of inadmissibility. "'It is settled that evidence of other crimes is ordinarily admissible where it tends to show guilty knowledge, motive, intent, or presence of a common design or plan.'" (*Id.* at p. 464.)

Finally, *Thomas* considers the issue of the admissibility of evidence of defendant's commission of other crimes in terms of the relevancy of such evidence to corroborate the testimony of a prosecuting witness in sex cases. But without analyzing how such evidence tends to prove a *credibility fact* which is relevant to support the credibility of a prosecution witness, *Thomas* proceeds to set forth several guiding principles.

One principle announced is that a victim's testimony regarding other similar sex offenses committed by the defendant with the victim is inadmissible to support the credibility of the victim's testimony regarding the sex offense which is the subject of the offense charged against the defendant. In stating a rationale for this principle, the *Thomas* court refers to the case of *People* v. *Stanley* (1967) 67 Cal.2d 812 [63 Cal.Rptr. 825, 433 P.2d 913], and makes this observation: "Distinguishing the cases on the basis of the source of the testimony, we concluded that when evidence of such other offenses comes from the mouth of the prosecuting witness, as in *Stanley, then 'the trier of fact is not aided by evidence of other offenses where that evidence is limited to the uncorroborated testimony of the prosecuting witness.'* (*Ibid.*) *Stanley* thus stands only for the proposition that the prosecuting witness cannot give testimony regarding defendant's prior sex offenses *with that witness,* for such evidence 'add[s] nothing to the prosecution's case. . .[and] involves a substantial danger of prejudice to defendant.'" (*Thomas, supra,* 20 Cal.3d 457, 469.) (Italics in original.)

The *Thomas* court then considered the question of the admissibility, for witness-credibility purposes, of evidence that a defendant had committed sex offenses with persons other than the victim of the offense which is the subject of the charge against the defendant. The conclusion reached by *Thomas* was set forth in this language: "Nothing we said in *Stanley* would justify the general admission of evidence of *all* prior offenses with persons other than the prosecuting witness if the sole asserted purpose for the admission of such evidence was to corroborate the prosecuting witness." (*Id.* at p. 469) (Italics in original.)

The *Thomas* court then enunciated a third principle relating to the issue of the admissibility of other-crimes evidence against a criminal defendant for witness-credibility purposes. The *Thomas* court referred to

a previous Court of Appeal case, *People v. Covert* (1967) 249 Cal. App.2d 81 [57 Cal.Rptr. 220]. The *Thomas* court stated that it agreed with the rule of law set forth in *Covert* to the effect that evidence that defendant had committed prior similar acts with victims similar to the victims in the case in question would be admissible to corroborate the testimony of the victim *if* such evidence was independently admissible to prove a fact such as common design or plan—a fact that is relevant apart from the relevancy of the fact of a defendant's disposition or propensity to commit such offenses. Thus, the *Thomas* court stated: "We confirm, to an extent at least, the propriety of the *Covert* thesis, namely, that evidence of similar, nonremote offenses involving similar victims, declared admissible in *Kelley* and *Cramer* to show a common design or plan, may also assist in *corroborating the prosecuting witness' version of events.*" (*Thomas, supra,* 20 Cal.3d 467, 468.)[2] (Italics added.).

The witness-corroboration theory—confirmed in *Thomas*—was followed in *People v. Goodson* (1978) 80 Cal.App.3d 290 [145 Cal.Rptr. 489]. There the court sustained the admissibility of evidence of a sex act committed by the defendant with another person other than the victim of the current charge on the basis of a showing of *common design* or *plan,* but added: "The result of the admission of such evidence is, in part, to corroborate the victim's testimony. This result is not disapproved by *Thomas* where the evidence is *otherwise admissible.*." (*Id.* at p. 295.) (Italics added.)

It might well be argued that the several legal principles set forth in *People v. Thomas* are limited to the situation presented in sex cases alone. But even if extended beyond sex cases, it seems clear that *Thomas* can be no authority for the People's position in the case before us that Fred's testimony that, on four or five prior occasions, defendant had provided him with marijuana, could be deemed relevant to establish some *credibility fact* that would support his credibility as a witness to the sex and nonsex events of May 8, or that the testimony of Jane to the effect that on two of these occasions she was present and defendant offered marijuana to Fred and to her is relevant to prove a *credibility* fact that also supports Fred's credibility as a witness to the May 8 events.

It is to be noted that, for sex cases, *Thomas* rejects completely the theory that the testimony of a victim as to prior sex acts committed by

---

[2]The *Kelley* case referred to is *People v. Kelley* (1967) 66 Cal.2d 232 [57 Cal.Rptr. 363, 424 P.2d 947], and the *Cramer* case referred to is *People v. Cramer* (1967) 67 Cal.2d 126 [60 Cal.Rptr. 230, 429 P.2d 582].

defendant, or the testimony of a witness similar to the victim that prior criminal acts with that person were committed by the defendant, is *independently* admissible to *corroborate* the victim's testimony as a witness regarding the crime charged against defendant.

In speaking about "corroboration" of the victim's testimony regarding the criminal acts charged against a defendant it seems reasonable to conclude that the *Thomas* court is using the term "corroboration" as being synonymous with the legal concept of "supporting the credibility of a witness," which is the term we find in various Evidence Code sections such as sections 785, 786, 787, and 790.[3]

In setting forth the principle that, if evidence that defendant committed criminal acts on other occasions becomes admissible on an independent theory such as to prove common design or plan, it then becomes admissible to *"corroborate"* the victim-witness "version" of events, the *Thomas* court did not refer to Evidence Code section 1101. How such evidence can be used as *corroborative* evidence to support the victim-witness' version of the crime charged without being used as *propensity* evidence to prove that defendant committed the offense charged because of his propensity—which would appear to be proscribed by Evidence Code section 1101—is not discussed or considered.

In the case at bench, since the trial judge admitted the testimony of Fred and Jane regarding prior acts of defendant in providing Fred and Jane with marijuana on the sole ground that it was relevant to support the credibility of Fred as a witness to the May 8 events, its admissibility must be deemed barred for such purpose by the holding of *Thomas*. Since *Thomas* rejects an independent admissibility theory for such evidence to support the credibility of the victim-witness in sex cases, it is certainly no authority for concluding that the independent support-of-witness-credibility theory should be applicable to a nonsex case, or to a case such as presented in the case at bench where both a sex charge and a nonsex charge against the defendant are presented.

The People present no persuasive authority or logical reasoning process to support their view that the testimony of Fred and Jane regarding prior occasions when defendant supplied them with marijuana was admissible on a theory that such evidence supported the credibility of

---

[3]The provisions of these Evidence Code sections referred to have been set forth previously herein with the exception of Evidence Code section 785. Section 785 provides: "The credibility of a witness may be attacked or supported by any party, including the party calling him."

Fred in his testimony regarding defendant's sex and nonsexual crimes committed against him on May 8.

To hold that such evidence is admissible in the case at bench on a support-of-witness-credibility theory would espouse an evidentiary rule of law that would constitute an emasculation of the statutory prohibition (set forth in Evid. Code, § 1101) against the admissibility of evidence that defendant committed a similar offense when the sole relevancy of such evidence is that of proof of defendant's disposition, propensity or character trait to commit such offenses from which it may be inferred that he acted in conformity with his propensity and committed the charged offense. This emasculation of Evidence Code section 1101 the *Thomas* court refused to recognize on the facts of the *Thomas* case itself and we refuse to sanction such an emasculation in the case at bench.

The People seek to find support for their view in the cases of *People v. Remiro* (1979) 89 Cal.App.3d 809 [153 Cal.Rptr. 89] and *People v. Manson* (1976) 61 Cal.App.3d 102 [132 Cal.Rptr. 265]. The *Remiro* case was a murder case in which the case against defendant was tried on a conspiracy theory. In *Remiro,* the court accepted the theory that evidence which went to establish the nature and scope of a conspiracy to commit many criminal acts of which the murder of the victim was simply a part, was relevant to show the commitment of the defendant and the coconspirators to the common design and plan of the overall conspiracy. Similarly, in *Manson,* the evidence introduced by the prosecution related to an overall grand conspiracy of which the particular murders involved constituted only a part. The *Manson* and *Remiro* cases can lend no support for the view that the evidence objected to in the case at bench was properly admitted to support the credibility of the victim, Fred.

In the case at bench, the People present no tenable theory that the testimony of Fred and Jane regarding defendant's acts of furnishing them with marijuana on prior occasions was admissible to prove some relevant fact such as a "common scheme or plan" to which the "support of credibility" or "witness corroboration" theory of admissibility can be attached to avoid a violation of the provisions of Evidence Code section 1101.

Even if there existed such a dual theory of admissibility in the case at bench, it could not be used to sustain the admissibility of the testimony of Fred and Jane, since the trial court expressly admitted the evidence on the one support-of-witness-credibility theory only, and advised the

jury when the evidence was admitted, and as a part of the jury instructions at the conclusion of the evidence and arguments, that the evidence could be used by the jury solely and exclusively for the purpose of supporting the credibility of the victim, Fred, with respect to his testimony regarding the charged crimes allegedly committed on May 8.

Since there was no legitimate way for the jury to follow the court's instruction and use this evidence for the purpose of supporting the credibility of Fred as a witness, we can only conclude that the jury used this evidence for the inadmissible purpose, proscribed by Evidence Code section 1101, to find that defendant had a propensity or disposition for providing minors with marijuana and that, pursuant to his disposition or propensity, he provided Fred with marijuana on May 8 as charged in count II of the amended information.

The fact that the jury found defendant guilty of supplying Fred with marijuana on May 8, as charged in count II, but could not agree on a verdict as to the criminal sex acts charged to have been committed on the same date as charged in count I, leads inexorably to the conclusion that the jury invalidly used the objected-to evidence to convict defendant of the marijuana charge on the basis of defendant's propensity or disposition to provide minors with marijuana.

We deem the error in admitting the evidence of Fred and Jane regarding defendant's prior acts as prejudicial and reversible error. The question of whether Fred was telling the truth or defendant was telling the truth regarding the events of May 8, 1977, became the key issue to be determined in the case. Had Fred and Jane's testimony regarding the prior acts of defendant not been admitted, it is reasonably probable that a more favorable result would have been obtained by defendant. (*People* v. *Duran* (1976) 16 Cal.3d 282, 296 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) If a defendant is to be convicted, he is entitled to be convicted only on relevant, nonprejudicial evidence. (*People* v. *Guerrero* (1976) 16 Cal.3d 719, 730 [129 Cal.Rptr. 166, 548 P.2d 366].)

The judgment is reversed.

Files, P. J., and Swearinger, J.,* concurred.

A petition for a rehearing was denied November 21, 1979, and respondent's petition for a hearing by the Supreme Court was denied January 17, 1980.

---

*Assigned by the Chairperson of the Judicial Council.