[Crim. No. 32158. Second Dist., Div. One. May 5, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
GERALD RICHARD REEVES, Defendant and Appellant.

COUNSEL

Martin W. Staven for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Gary R. Hahn and Robert D. Breton, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**LILLIE, Acting P. J.**—A jury found defendant guilty of three counts of lewd and lascivious conduct (§ 288, Pen. Code), and oral copulation (§ 288a, subd. (c), Pen. Code) with a child. The court found defendant to be a mentally disordered sex offender but determined he would not benefit from care or treatment in a state hospital, denied probation, and sentenced him to state prison. He appeals from the judgment.

During the summer of 1976 and at defendant's request, Robert (age 13), who did part-time work for defendant (age 36), began spending evenings with him at his home where they slept together for 30 or 40 nights. One night in early December, Robert was awakened by defendant who was orally copulating him; Robert was "scared." Subsequently, defendant had "some kind of sexual experience" with Robert on 25 to 30 occasions. In December 1976, defendant took numerous photographs of Robert who posed nude; he showed these and photographs of other nude boys to Robert. On December 8, 1976, defendant showed Robert these slides (of Robert) and photographs of other boys who posed in the nude, then asked him to orally copulate him; Robert refused but defendant kept "bugging" him and finally he relented but stopped when he began to choke. Robert turned on his back on the bed; defendant then proceeded to masturbate him.

On the night of April 15, 1977, defendant put Vaseline between Robert's legs then engaged in sexual activity with him. On May 4, defendant again rubbed Vaseline on Robert and the same thing occurred; he also touched Robert's private parts. After this last incident, Robert told Delbert Walters about his sexual activities with defendant; Walters told Robert's mother who on May 6 went with Robert to the police.

On May 9, pursuant to a search warrant, the police seized a jar of Vaseline, two locked briefcases containing defendant's identification card and photographs, two cartons of slides taken of Robert in the nude, a camera, the exposed film in the camera, various photographs and other items from defendant's bedroom. The film was sent to the crime laboratory and developed; four of the twenty photographs were of Robert.

After his arrest and having been advised of and waived his constitutional rights, defendant told Officer Rickards he had never had any sexual relations with Robert, Robert had spent "several occasions in his home" and on the occasions Robert spent the evening with him "we would both sleep together in the same bed in my bedroom because if he had a father he would sleep with his father"; relative to the taking of nude photographs of Robert, he said "Bobby asked me to take the pictures so that he could show them to his girlfriend"; he did not answer Officer Rickards' question concerning why he still had possession of the photographs; he said Robert had spent the evening in his home "approximately thirty times that Bobby had been—twenty-five to thirty times," and he took the photographs of Robert in his bedroom with Robert on his bed.

The defense consisted of character evidence of defendant's reputation for honesty and veracity and that he was not the type likely to engage in sexual activities with a young boy. Defendant did not testify.

Received in evidence were the items seized from defendant's bedroom including two cartons of slides consisting of three sets of 75 each depicting Robert in the nude (exh. 4) and set up for a possible show, four transparencies of Robert (exh. 5) and the contents of two briefcases— several hundred photographs of other boys in the nude (exhs. 8, 9). The prosecutor argued that the evidence defense counsel "is seeking desperately to exclude is forceful, it's not prejudicial, and it's relevant to the issues that are before the court." Defense counsel conceded that the slides and photographs of Robert were admissible and "should be received" but as to the photographs of other nude boys in suggestive and sexual poses (exhs. 8, 9), asked the court "to exercise its discretion under 352 here that I think that material is so prejudicial that any probative value is outweighed by the imflamatory nature of it. . . I think the People certainly have a right to all relevant evidence but it must be balanced against the defendant's right to a fair trial." The objection

was overruled.[1] ██ ██ Appellant urges here that it was error not to exclude the photographs of the other boys under section 352, Evidence Code[2] because they constituted prejudice completely beyond any probative value, and because they were irrelevant. As to the latter, we note that neither the defense objection at trial nor defense counsel's argument thereon included the matter of relevance; the objection related solely to the exclusion of the evidence under section 352. It was only *after* the trial court made its ruling on defendant's objection that his counsel briefly mentioned he did not think the photographs of other boys "are relevant as to defendant's motive here." Thus although appellant argues the relevance of the photographs of other boys,[3] the real issue here is whether the trial court abused its discretion in admitting the evidence under section 352, Evidence Code.

Defendant admitted to Officer Rickards that Robert stayed with him 25 to 30 times and he and Robert slept together in the same bed "because if he had a father he would sleep with his father," but denied having any sexual relations with him; and admitted taking photographs of Robert in his bedroom on the bed, but claimed he did so because Robert had asked him to take the pictures so he could show them to his girlfriend. The defense that defendant did not commit the acts attributed to him by Robert was developed by (1) extensive and skillful cross-examination of Robert by defense counsel who sought to attack Robert's credibility by attempting to show how implausible it was for one who was "scared" after the first sexual encounter to continue to sleep with defendant 30 to 40 times thereafter without telling anyone,

---

[1]The court said, "And my theory is that it rebuts the statement that pictures were being taken of the victim to show his girl, and also to corroborate his statement that before they would go into these acts he would show him pictures; and also to rebut the insinuation that this was a recently contrived story because of the dispute about Delbert Walters."

[2]Section 352 of the Evidence Code provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

[3]In particular, appellant challenges the "prosecution's theory" of admissibility of the pictures—corroborating Robert and showing defendant's intent. That which was argued by the prosecutor to the judge out of the presence of the jury is of little significance here; further appellant should have directed his argument in this connection to the trial judge. Whether or not evidence is relevant is an issue requiring the exercise of judicial discretion, and the trial court's ruling will be sustained absent a showing of abuse of that discretion. (*People v. Love* (1977) 75 Cal.App.3d 928, 933 [142 Cal.Rptr. 532].) We find here no abuse of the trial court's discretion.

by creating the impression that it was Robert who initiated and enjoyed the sexual contacts and by implying that Robert fabricated his story because he was angry with defendant for ending their relationship; and (2) proving by character witnesses that defendant was not a homosexual or the type to engage in sexual activity with a young boy. First, the photographs of both Robert and the other boys in the nude constituted part of the offense with which defendant was charged, particularly those committed on December 8,[4] and as stated in *People* v. *Thompson* (1979) 98 Cal.App.3d 467 [159 Cal.Rptr. 615], pertained to "the occasion at issue in the current action" (p. 477). Second, the photographs of other nude boys tended to discredit defendant's extrajudicial statement that he took the photographs of Robert only because he asked him to so that he could show them to his girl friend (*People* v. *Murphy* (1972) 8 Cal.3d 349, 354 [105 Cal.Rptr. 138, 503 P.2d 594]), refute any inference that it was Robert who initiated the sexual conduct, and challenge the implication defendant was just a "big brother" to Robert, "a family friend" and a "father" figure.

Appellant attacks the "support-of-witness-credibility theory" on the ground that *People* v. *Thompson* (1979) 98 Cal.App.3d 467 [159 Cal. Rptr. 615] [evidence that defendant furnished marijuana to victim and another minor on *another* occasion, inadmissible] and *People* v. *Thomas* (1978) 20 Cal.3d 457 [143 Cal.Rptr. 215, 573 P.2d 433] [evidence of sexual acts with others not the victim, inadmissible when offered solely to corroborate prosecuting witness] have "laid [it] to rest." *Thompson* is distinguishable because the evidence here (1) did not constitute character-trait evidence of prior crimes, but pertained to "the occasion at issue in the current action" (p. 477); and (2) was not admitted "solely and exclusively for the purpose of supporting the credibility of the victim. . . ." (P. 482.)

Generally, it is the murder case in which the photographs are gruesome and bloody in nature that deals with the issue of whether or not the probative value of photographs is outweighed by the probability of undue prejudice (*People* v. *Murphy* (1972) 8 Cal.3d 349, 363 [105 Cal. Rptr. 138, 503 P.2d 594]; *People* v. *Robles* (1970) 2 Cal.3d 205, 214 [85 Cal.Rptr. 166, 466 P.2d 710]; *People* v. *Love* (1960) 53 Cal.2d 843, 852 [3 Cal.Rptr. 665, 350 P.2d 705]; *People* v. *James* (1978) 88 Cal. App.3d 150, 159 [151 Cal.Rptr. 354]), but the same principle applies

---

[4]On December 8 in the bedroom, defendant showed Robert slides of himself (Robert) in the nude as well as "some other pictures of other boys," then right after the showing, defendant committed the acts charged.

here. The admissibility of such photographs lies solely within the discretion of the trial judge, and his ruling will not be reversed unless their probative value is clearly outweighed by their probable prejudicial effect. (*People v. Murphy* (1972) 8 Cal.3d 349, 363 [105 Cal.Rptr. 138, 503 P.2d 594].) There is manifest in the record no showing of undue prejudice or that the jury was misled. The admission of the photographs was well within the discretion of the trial judge.

■■■ Appellant's contention that his trial counsel was ineffective and inadequate is based on what he terms, a perfunctory and futile effort to present a *Ballard* (*Ballard v. Superior Court* (1966) 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]) motion, his cross-examination of Robert which elicited prior sex acts between him and defendant and his failure to request a "lesser included" instruction and an instruction that he could not be convicted of both a violation of section 288, and a violation of section 288a, subdivision (c) on December 8.

Defendant's trial counsel was W. J. Hardy, deputy public defender. In our view, his vigorous representation of his client throughout the trial afforded him the best possible defense under the most difficult circumstances. Confronted with overwhelming evidence of defendant's guilt, counsel sought to fashion out of an extensive cross-examination of Robert and the character testimony of defense witnesses, a denial of wrongdoing on the theory that Robert lied and defendant was not the type of person to commit such acts. Contrary to the asserted incompetence of counsel, the record reflects his careful preparation for trial, active vigorous participation in trial—numerous objections, motions, extensive cross-examination, presentation of the only defense reasonable under the circumstances and a worthy argument to the jury—and informed tactical choices well within the range of reasonable competence. We cannot say, nor has appellant demonstrated, that counsel failed "'to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates'" (*People v. Frierson* (1979) 25 Cal.3d 142, 160 [158 Cal.Rptr. 281, 599 P.2d 587]), or that his "acts or omissions resulted in the withdrawal of a potentially meritorious defense." (*People v. Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859].)

■ Prior to trial, counsel moved for a psychiatric examination of Robert under *Ballard v. Superior Court* (1966) 64 Cal.2d 159 [49 Cal. Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416], and argued grounds

therefor claiming there were valid reasons to question the veracity of Robert's charges and to inquire into his motive to fabricate them, a theory of defense he subsequently advanced. It is apparent that this motion was proffered as a matter of form with the realization there was little chance of prevailing thereon and indeed, no necessity for such examination arose. *Ballard* teaches that the trial judge should be authorized to order the prosecutrix in a sex case to submit to a psychiatric examination if the circumstances indicate a necessity for an examination. "Such necessity would generally arise only if little or no corroboration supported the charge and if the defense raised the issue of the effect of the complaining witness' mental or emotional condition upon her veracity." (P. 177.) Robert's charges were corroborated by slides and photographs, the jar of Vaseline and defendant's admission that Robert slept overnight at his house on 30 occasions.

■ Appellant attacks his trial counsel for having on cross-examination of Robert, "single-handedly" brought out prior sex acts. In his extensive cross-examination of Robert, counsel set out to prove that Robert was lying—that he fabricated the story because defendant wanted to end the relationship, it was Robert who wanted to engage in sexual conduct, it is unlikely such acts occurred because if they had and he was "scared," he would not have gone back night after night and would have reported defendant, and he was vague and confused as to the dates and the specific acts committed. To test Robert's memory and to give his testimony an aura of improbability, defense counsel asked Robert how many times he claimed he had some sexual experience with defendant, and he answered 25 or 30 times beginning before December. He did not inquire into specific acts, but then elicited the fact that Robert waited until May 22 to tell anyone. This was an obvious trial tactic used to attack the credibility of Robert's story. It was unsuccessful, but even had he enhanced Robert's testimony by exploring the subject, it does not demonstrate action less than that to be expected of a reasonably competent attorney acting as a diligent advocate. (*In re Richard W.* (1979) 91 Cal.App.3d 960, 974 [155 Cal.Rptr. 11].) Moreover, we fail to see any damage to defendant because he admitted to Officer Rickards Robert stayed in the evening 25-30 times and that when he did they both slept in the same bed.

■ Counsel did not request a "lesser included" instruction re contributing to delinquency of a minor but did request one on child molesting which was refused. On the state of the evidence neither was

appropriate because if defendant was guilty at all he was guilty of the offenses charged. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715-716 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Wiley* (1976) 57 Cal.App.3d 149, 163 [129 Cal.Rptr. 13].) Moreover, the defense was a flat denial and the presentation of character evidence thus there was "no evidence that the offense was less than that charged." (*People* v. *Sedeno, supra*, 10 Cal.3d 703, 715-716.)

Appellant's complaint that his counsel should have submitted an instruction that although he was charged with violating section 288 (count III) and section 288a, subdivision (c) (count IV) on December 8, he only could be convicted of one, is without merit. Under the evidence, such instruction would have been futile because the act relied upon to support the violation of section 288 (lewd and lascivious act on child under 14) is separate and distinct from the conduct forming the basis of the violation of section 288a, subdivision (c) (participation in act of oral copulation), even though both acts occurred on the night of December 8. (*People* v. *Greer* (1947) 30 Cal.2d 589, 600-604 [184 P.2d 512].)

 During the interview with Officer Rickards, defendant was asked if he took photographs of Robert in the nude, and he answered, "Bobby asked me to take the pictures so that he could show them to his girl friend." Officer Rickards then asked why he still had possession of the photographs to which defendant made no reply; thereafter certain other questions were asked and answered. Based upon the foregoing, the court instructed the jury on adoptive admission (CALJIC No. 2.71.5). █ ██ ██ No objection was interposed either to Officer Rickards' testimony or to CALJIC No. 2.71.5.[5] █ Appellant now contends that because the question was not an accusatory statement, his silence may not be considered against him as indicating an admission that the accusation was true. Appellant does not, nor can he now challenge the admissibility of Officer Rickard's testimony, only that the instruction should not have been given.

Whether framed as an incriminating question or an incriminating statement, the clear, direct and inescapable inference therefrom in the context of defendant's answer to the preceding question, is the officer's accusation that he photographed Robert in the nude for his own sexual activities with Robert otherwise he would have given the photographs to

---

[5]Failure to object to CALJIC No. 2.71.5 is cited by appellant as another act of incompetence by his trial counsel. Objection would have been futile for the evidence supports the giving of the instruction.

Robert. The question was an accusatory statement by implication. (See *People* v. *Sanders* (1977) 75 Cal.App.3d 501, 508 [142 Cal.Rptr. 227]; *People* v. *Edmonson* (1976) 62 Cal.App.3d 677, 680, 681 [133 Cal. Rptr. 297].) The natural reaction of an innocent man in such circumstance would have been to deny the accusatory implication, and defendant's failure to do so may be regarded as giving rise to an inference of acquiescence in the truth thereof. It furnished a proper evidentiary foundation for giving CALJIC No. 2.71.5.

■ Finally, appellant's claim that "his failure to reply to this particular question may well have been an assertion of his right to remain silent," not raised on trial or by objection, is not properly before us. (*In re Dennis M.* (1969) 70 Cal.2d 444, 462 [75 Cal.Rptr. 1, 450 P.2d 296]; *People* v. *Burden* (1977) 72 Cal.App.3d 603, 614 [140 Cal.Rptr. 282].) We note even on appeal appellant does not claim he invoked his right to remain silent. The reason, of course, is obvious. The circumstances surrounding defendant's silence simply do not lend themselves to an inference that in failing to answer he relied on any claim of constitutional right to remain silent. (*People* v. *Preston* (1973) 9 Cal.3d 308, 314 [107 Cal.Rptr. 300, 508 P.2d 300].)

The judgment is affirmed.

Hanson (Thaxton), J., and Weisz, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 2, 1980.

*Assigned by the Chairperson of the Judicial Council.