[Crim. No. 28235. Second Dist., Div. One. Oct. 8, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
GARVIN KENT EDMONDSON, Defendant and Appellant.

**COUNSEL**

Seymour Phillips, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Frederick R. Millar, Jr., and William R. Weisman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

LILLIE, J.—A jury found defendant guilty of assault with a deadly weapon (§ 245, subd. (a), Pen. Code). He appeals from the judgment.

On his way home from a social gathering, George Anderson was warned by Wayne Daley, who rode up on his bicycle, that he might be in trouble; George turned around and saw defendant and Leon Johnson approach; Leon held a butcher knife; George pulled out his pocket knife, and defendant drew a gun from his waistband and began to fire in George's direction missing him but hitting a stop sign on the corner; George ran home through the freeway underpass. Subsequently Officer Manlove went to the scene and observed bullet holes in the stop sign.

Defendant and several witnesses testified that at the time of the incident he was in Disneyland with his girl friend.

On rebuttal Anthony Clifton testified he saw George leave the social gathering followed by defendant and Leon; on the following day he saw defendant with a gun but did not remember whether defendant said anything about George. Anthony Thomas testified he saw defendant follow George, heard gunshots and saw George run under the tunnel of the freeway. Sherman Smith, another rebuttal witness, testified he saw George leave the social gathering and defendant and Leon walk behind him; he heard gunshots and saw George run away but could not ascertain who was shooting at whom; the following day he saw defendant on Leon's porch; defendant had a gun; he heard a conversation between defendant and Richard Buchanan. Over objection, Smith testified that "Richard asked [defendant] why did he shoot at his partner, Treetop [George] . . . ," and defendant replied, "I shoot you, too" whereupon he (defendant) pulled out his gun and clicked it but it did not fire, then defendant said "the gun was supposed to go off."

■ Appellant claims it was prejudicial error for the court to allow Smith to testify to the foregoing conversation because it amounted to inadmissible hearsay. Richard's question to defendant and defendant's express words in reply became admissible against defendant as an adoptive admission of the truth of Richard's accusatory statement. (*People* v. *Preston*, 9 Cal.3d 308, 313-314 [107 Cal.Rptr. 300, 508 P.2d 300]; *People* v. *Tolbert*, 70 Cal.2d 790, 805 [76 Cal.Rptr. 445, 452 P.2d 661].) Under section 1221, Evidence Code, a person's hearsay statement

is admissible against a party as an adoptive admission "if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth."

■ "If a person is accused of having committed a crime, under circumstances which fairly afford him an opportunity to hear, understand, and to reply, and which do not lend themselves to an inference that he was relying on the right of silence guaranteed by the Fifth Amendment to the United States Constitution, and he fails to speak, or he makes an evasive or equivocal reply, both the accusatory statement and the fact of silence or equivocation may be offered as an implied or adoptive admission of guilt. (*People* v. *Tolbert* (1969) 70 Cal.2d 790, 805 [76 Cal.Rptr. 445, 452 P.2d 661]; *People* v. *Robinson,* (1964) 61 Cal.2d 373, 401-402 [38 Cal.Rptr. 890, 392 P.2d 70]; *People* v. *Briggs* (1962) 58 Cal.2d 385, 408-409 [24 Cal.Rptr. 417, 374 P.2d 257]; *People* v. *Davis* (1954) 43 Cal.2d 661, 670 [276 P.2d 801]; see *People* v. *Osuna* (1969) 70 Cal.2d 759, 765 [76 Cal.Rptr. 462, 452 P.2d 678]; Evid. Code, §§ 1221, 1204.)" (*People* v. *Preston,* 9 Cal.3d 308, 313-314 [107 Cal.Rptr. 300, 508 P.2d 300].) In *Preston,* homicides were committed during a burglary; Suzanne, victim's daughter, testified that she, defendant, codefendant Sommerhalder, and Richard were in defendant's room; Sommerhalder told her that they had broken into her mother's trailer and the victims came in and there was an accident, and defendant responded "There wasn't much money." Said the court at page 314: "These statements accused defendant of being with Sommerhalder in the Ackley trailer at the time when the burglary and killings took place. They were voluntarily made, in a private conversation, in a private home, with only these four persons present. Inferences could properly be drawn that defendant heard the statements, understood their import, had the opportunity to deny, and that he chose to remain silent except for an evasive and equivocal statement. There is no basis for any inference that his silence was based upon his Fifth Amendment privilege of silence. We find no error in the admission of this evidence at the trial as an exception to the hearsay rule."

■ The circumstances here were such that it would not be reasonable to conclude that defendant did not hear Richard's question, understand its import or have an opportunity to deny it. Defendant's response was voluntarily made in a private conversation with Richard in the presence of only two other persons on the porch of a private home on the day following the incident. Richard's question to defendant "why did

[you] shoot at [George]" amounted to an accusation that defendant had shot at George; defendant's reply "I shoot you, too" was evasive and equivocal and must be considered as implying that Richard was correct in assuming that he had shot at George. The trial judge could reasonably find from defendant's words and conduct in the face of Richard's question that defendant conceded the truth of Richard's implied accusation and adopted the same; and properly overruled the objection.

Defendant was 17 years of age at the time of the commission of the offense; he was tried in the criminal court as an adult and convicted of assault with a deadly weapon in violation of section 245, subdivision (a), Penal Code, for which the statute provides punishment "by imprisonment in the state prison for six months to life, or in a county jail not exceeding one year, or by fine . . . or by both such fine and imprisonment"; he was 18 years old at the time, and the trial court exercised its discretion[1] and committed him to the Youth Authority under section 1731.5, Welfare and Institutions Code. Once a person is committed pursuant to this statute, the Youth Authority is directed to retain him, except as otherwise provided, "under supervision and control so long as in its judgment such control is necessary for the protection of the public." (§ 1765, subd. (a), Welf. & Inst. Code.) In the case of one convicted of a misdemeanor, control by the authority is limited to a period of two years or until "the person reaches his 23rd birthday, whichever occurs later" (§ 1770, Welf. & Inst. Code[2]).

Invoking section 17, subdivision (b)(2), Penal Code,[3] appellant argues that the crime of assault with a deadly weapon, punishable by

---

[1]After reading and considering the reports of the probation officer and the diagnostic study by and recommendation of the California Director of Corrections pursuant to section 1203.03, Penal Code, and hearing the testimony of defendant's witnesses Stevensen, James and Ridgeway, the trial court denied probation and ordered that defendant be committed to the Youth Authority for the term prescribed by law and "given credit for 215 days time served."

[2]Section 1770, Welfare and Institutions Code provides: "Every person convicted of a misdemeanor and committed to the authority shall be discharged upon the expiration of a two-year period of control or when the person reaches his 23rd birthday, whichever occurs later, unless an order for further detention has been made by the committing court pursuant to Article 6 (commencing with Section 1800)."

[3]Section 17, Penal Code provides in pertinent part: "(a) A felony is a crime which is punishable with death or by imprisonment in the state prison. Every other crime or public offense is a misdemeanor except those offenses that are classified as infractions. [¶] (b) When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by a fine or imprisonment in the county jail, it is a misdemeanor for all

imprisonment in the county jail or state prison, became a misdemeanor "for all purposes" when the trial court committed him to the authority, thus section 1770, Welfare and Institutions Code, providing for his discharge in two years or upon reaching his 23d birthday, whichever comes later, is unconstitutional in that it restrains him "of his liberty for a longer period than he would have been had he been committed to either County [jail][4] or State Prison,"[5] and deprives him "of equal protection of the laws, and constitutes cruel and unusual punishment."

The appellant in *People* v. *Olivas*, 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375],[6] raised the issue "whether a misdemeanant between the ages of 16 and 21 may constitutionally be committed to the Youth Authority (Welf. & Inst. Code, § 1731.5) for a term potentially longer than the maximum jail term which might have been imposed for the same offense if committed by a person over the age of 21 years." (P. 239.) Comparing Olivas' Youth Authority commitment, which under section 1770, Welfare and Institutions Code permitted a maximum term of three years, with the maximum permissible county jail term (six months) that could be imposed upon an adult offender for a misdemeanor assault (§ 240, Pen. Code) (pp. 241-242), the court found the former to be potentially greater than the latter, and "concluded that the selective process which permits the extended incarceration of youthful misdemeanants constitutes a denial of equal protection of the law. We hold, therefore, that youthful misdemeanants may not constitutionally be held subject to the control of the Youth Authority for any period of time in excess of the maximum jail term which might be imposed." (P. 239.) Further, at page 257 the court stated: "We hold that section 1770 is unconstitutional insofar as it authorizes the Youth Authority to maintain control over misdemeanants committed to its care for any period of time in excess of the maximum jail term permitted by statute for the offense or offenses

---

purposes under the following circumstances: [¶] (1) After a judgment imposing a punishment other than imprisonment in the state prison. [¶] (2) When the court commits the defendant to the Youth Authority."

[4]In his opening brief appellant asserts that had he "been committed to the county jail for a period of one year as prescribed by law, and allowed credit for 215 days of dead time, [he] would be released at the latest after serving 150 days in the county jail."

[5]Implicit in this contention is the apparent effort of appellant to measure his commitment to the Youth Authority against the *minimum* term (six months) in the state prison.

[6]On August 26, 1976, the opinion in *People* v. *Olivas*, 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375], was modified by adding footnote 23. This footnote dealt with a situation in which a youthful defendant has been convicted of a crime which may be alternatively treated as either a misdemeanor or a felony. However, on September 7, 1976, the court vacated footnote 23.

committed." (P. 257.) It is our view that, as applied in the instant case, *Olivas* does not dictate an immediate release of defendant from the Youth Authority.

Olivas, 19 years old, suffered a straight misdemeanor conviction, was "convicted of a misdemeanor and committed to the authority" (§ 1770, Welf. & Inst. Code) and appealed from a judgment ordering his commitment to the Youth Authority "following a conviction of misdemeanor assault. (Pen. Code, § 240.)" (17 Cal.3d at p. 239); the maximum term of imprisonment under section 240 is six months in the county jail. In the case at bench defendant originally was convicted of a felony. If his custodial status during his detention by the authority is to be treated as that of a misdemeanant, it is because his conviction of a crime treated alternatively as either a misdemeanor or a felony was denominated a misdemeanor pursuant to section 17, subdivision (b)(2), Penal Code when the court committed him to the Youth Authority.

The court in *Olivas* held that the defendant, simply because of his age, may not be singled out for a potentially greater "maximum period of incarceration" than an adult convicted of the same offense.[7] But the *Olivas* rationale does not require that this defendant, committed to the Youth Authority for conviction of an alternative felony-misdemeanor, may be detained by it only for the period of the maximum jail sentence. It is true that reference is made by the court in *Olivas* to the "maximum possible jail term," but the maximum period of incarceration for assault under section 240, Penal Code is six months imprisonment in the county jail, and Olivas' misdemeanor conviction carried no possible state prison sentence. Thus in its comparison of Olivas' Youth Authority commit-

---

[7]"To reiterate, our analysis has shown that section 1731.5 by its own terms affects a specifically designated class of individuals, persons convicted of a public offense. It divides that class into two groups and creates a sentencing scheme whereby those misdemeanants between the ages of 16 and 21 years of age are singled out for potentially longer terms of incarceration than all other misdemeanants." Pointing out the disparity this creates, the court continued: "Recognition of this disparity mandates that we re-emphasize the reasons why section 1731.5 applies to youthful misdemeanants in the first place. It is because such persons have been prosecuted *as adults,* adjudged by the same standards which apply to *any competent adult,* and convicted *as adults in adult courts.* Yet, despite the fact that they are treated in the same manner as any competent adult during the process which results in their convictions, such persons may be subjected to significantly greater terms of incarceration as a result of those convictions solely by reason of their age. We have concluded that such a sentencing scheme constitutes a denial of equal protection in violation of article I, section 7, of the California Constitution and the Fourteenth Amendment to the United States Constitution." (17 Cal.3d 236, 242-243.)

ment with the maximum period of incarceration permitted by section 240, the court necessarily was limited to the maximum possible jail term of six months. Throughout *Olivas* the Supreme Court interchangeably used such phrases as "the maximum period of incarceration which may be imposed under the Penal Code" (p. 241), "the longest jail term which might have been imposed" (p. 242), "the maximum period of incarceration permitted in his case" (p. 242), the "maximum permissible jail term" (p. 241) and "the maximum period of incarceration which could have initially been imposed by the sentencing court" (p. 257) which, in light of the discussion at pages 242 and 243, suggests to us that it was concerned only with the maximum possible sentence the committing judge could impose on an adult offender under the penal section involved whether it be a county jail or state prison sentence. Thus in determining the issue of equal protection, we measure the term of defendant's Youth Authority commitment against "the maximum period of incarceration which may be imposed under the Penal Code" (p. 241) upon an adult convicted of the same offense, which is life imprisonment. Therefore, for this purpose and as the maximum period of incarceration, appellant cannot invoke the one-year county jail sentence permitted by section 245, subdivision (a) on the theory that when the court committed him to the Youth Authority the alternative felony-misdemeanor was converted to a misdemeanor "for all purposes" pursuant to section 17, Penal Code. The *Olivas* test to determine if section 1731.5, Welfare and Institutions Code results in a denial of equal protection to a youthful misdemeanant, "such as defendant" directs us "to compare the maximum period of incarceration which may be imposed under the Penal Code with the period permitted upon commitment to the Youth Authority." (17 Cal.3d, pp. 240-241.) Applying this test it is readily apparent that defendant is not subjected to a potentially greater term of incarceration solely by reason of his age because the maximum period of incarceration under this Youth Authority commitment is about five years (§ 1770, Welf. & Inst. Code) in contrast to the maximum period of incarceration which may be imposed upon an adult offender by the sentencing court under section 245, subdivision (a), Penal Code, which is life imprisonment. Defendant has not been denied his equal protection guarantees.

Nor can appellant find comfort in *People* v. *Hannon,* 5 Cal.3d 330 [96 Cal.Rptr. 35, 486 P.2d 1235], which holds that an alternative offense is to be deemed a misdemeanor "for all purposes" when defendant is committed to the Youth Authority. We note that *Hannon* did not involve

defendant's custodial status during his detention in a Youth Authority institution, but his status *after* he had served a time therein and been rejected by it and returned to the committing court for further criminal proceedings.[8] The Supreme Court concluded that defendant's commitment to the authority "denominated his offense a misdemeanor 'for all purposes' " pursuant to section 17, subdivision (b)(2), Penal Code which precludes the subsequent imposition of felony punishment upon him by the trial court (p. 340). If *Hannon* compels an interpretation of the statutory language "for all purposes" (see 5 Cal.3d at p. 335), to include the custody status in a Youth Authority institution of any youthful defendant convicted of an alternative felony-misdemeanor which when he is committed to the Youth Authority would be transformed to that of a misdemeanant, nothing in *Hannon* declares that section 17, Penal Code was intended to limit the length of confinement of such a misdemeanant in an institution of the authority. To the contrary, the court expressly recognized that under section 1770, Welfare and Institutions Code, a defendant committed to the authority upon conviction of an alternative offense can be detained by it until his 23d birthday and even longer if he is deemed to be a danger to the public. In concluding that the anti-rehabilitative impact of a literal construction of section 17 is overstated, the court said at page 335: "The Youth Authority has a wide variety of means at its disposal to deal effectively with youthful offenders, and it cannot be said with accuracy that the agency is at the mercy of incorrigible minors. The Authority has access to all state and private correctional facilities [citation], and it may even transfer problem cases to the state prisons. [Citations.] Furthermore, the Authority may continue to hold a misdemeanant until he is 23 years old (Welf. & Inst. Code, § 1770) and thereafter apply to the trial court for two-year extensions of his detention if he is deemed a danger to the public because of physical or mental abnormality (Welf. & Inst. Code, §§ 1800-1803)." ■ Thus it does not appear to us that *Hannon* contemplated that denomination of an alternative offense as a misdemeanor

[8]Likewise *People* v. *Navarro*, 7 Cal.3d 248 [102 Cal.Rptr. 137, 497 P.2d 481], in which defendant was convicted of two narcotics offenses, involved the nature of defendant's conviction *after* his honorable discharge from the Youth Authority to which previously he had been committed for an offense (§ 245, Pen. Code) carrying optional sentences. The court affirmed its holding in *In re Herrera*, 23 Cal.2d 206, 214 [143 P.2d 345], that such commitment is a pronouncement of the sentence for the offense, and held "that a commitment to the authority based upon conviction of an optional sentence offense reduced that offense unconditionally to a misdemeanor, for all purposes thereafter . . . . Accordingly, because of Navarro's commitment to the Youth Authority his 1958 conviction of assault with a deadly weapon constituted a misdemeanor and did not render him ineligible for the narcotics addict treatment program under section 3052 [Welf. & Inst. Code]." (P. 271.)

"for all purposes" by reason of commitment to the Youth Authority limited the custodial period of the committee to one year or less.

Further, five years after *Hannon, Olivas* held that section 1770, Welfare and Institutions Code was unconstitutional only insofar as it results in a denial of equal protection "in defendant's case." Said the court: "Having considered the issue at length we conclude that operation of the challenged sentencing scheme and section 1770 may result, and in defendant's case has resulted, in a denial of equal protection under article I, section 7, of the California Constitution and the Fourteenth Amendment to the United States Constitution . . . ." (P. 257.) As we read *Olivas,* this supports the authority's detention of defendant herein for longer than one year so long as his equal protection guarantees are not violated, and we have held that they are not. To conclude otherwise would prevent the Youth Authority from detaining any youthful offender convicted of a crime which may be alternatively treated as either a misdemeanor or a felony and committed to the Youth Authority, for more than one year—the maximum jail term permitted for a misdemeanor— and in such case would render section 1770, Welfare and Institutions Code a nullity.

Further, there is no reason to believe that the Legislature intended section 17, subdivision (b)(2), Penal Code to limit the period of control the Youth Authority shall have over persons convicted of an alternative offense, under the Youth Authority Act, i.e., section 1770, Welfare and Institutions Code. In 1959 section 17, Penal Code was amended to read in pertinent part as it does today; "The 1959 treatment of Youth Authority commitment has remained essentially unchanged, in both language and substance, to the present." (*People* v. *Hannon,* 5 Cal.3d 330, 338 [96 Cal.Rptr. 35, 486 P.2d 1235].) In 1963 section 1770, Welfare and Institutions Code was amended to add to the provision that a misdemeanant could be held by the authority until the expiration of two years or his 23d birthday, whichever is later, the following: "unless an order for further detention has been made by the committing court pursuant to Article 6 (commencing with Section 1800)." No other change in section 1770 was effected by the Legislature. Thus four years after "for all purposes" was added to section 17, Penal Code, the Legislature reaffirmed its obvious intent that such language was not meant to limit the duration of a Youth Authority commitment for an alternative offense. If this were not so trial courts would be discouraged from utilizing Youth Authority commitments for alternative offenders where

the offense is a serious one thereby subjecting more youthful offenders to the harsh state prison environment. Too, it well can be anticipated that because of the short duration of a commitment of an alternative offender, the Youth Authority would reject many of the serious offenders because they could not be "materially benefited" (§ 1731.5, Welf. & Inst. Code) by a commitment limited to one year or less, and in serious cases, rather than chance rejection and return of the offender to the trial court which then at most can impose a one year jail sentence (*People* v. *Hannon,* 5 Cal.3d 330 [96 Cal.Rptr. 35, 486 P.2d 1235]), the trial court will be deterred from risking a Youth Authority commitment.

■ Defendant was not committed to the Youth Authority for a term potentially longer than the maximum term of imprisonment which might have been imposed upon an adult committing the same offense, and section 1770, Welfare and Institutions Code does not authorize the authority to maintain control over this defendant for any period of time in excess of the maximum term of imprisonment permitted by statute for the offense committed, thus we perceive no violation of defendant's equal protection guarantees. ■ The commitment of defendant for the period specified by the Youth Authority Act—until he reaches his 23d birthday—does not constitute cruel and unusual punishment (*People* v. *Getty,* 50 Cal.App.3d 101, 114 [123 Cal.Rptr. 704]; *People* v. *Barstow,* 42 Cal.App.3d 90, 95 [116 Cal.Rptr. 524]; *In re Gary W.,* 5 Cal.3d 296, 302 [96 Cal.Rptr. 1, 486 P.2d 1201] [commitment pursuant to §§ 1800-1803].)

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.