[Crim. No. 19440. First Dist., Div. One. Feb. 8, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT MARTIN, Defendant and Appellant.

COUNSEL

Jay E. Goodman, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Tiffany Rystrom, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GRODIN, J.—The defendant Robert Martin, convicted of assault with a deadly weapon (Pen. Code, § 245, subd. (a)) and found to have used a firearm in the commission of the assault (Pen. Code, § 12022.5), appeals from the judgment of conviction on grounds of prosecutorial misconduct and instructional errors. Understanding and evaluation of his contentions on appeal require an overview of the evidence adduced at trial.

Martin shared an apartment on Chestnut Street in San Francisco with Ms. Stephanie Hill. On the evening of September 14, 1978, Martin was standing on a balcony outside their apartment, which was on the third floor of the apartment building, when he saw Hill get out of a station wagon and enter the building. Inside the wagon were three men, waiting for Hill to return with her laundry. When Hill entered the

apartment, Martin expressed anger that she was with the three men, hit her several times with his fists, and threatened to blow her brains out with a gun he pulled from his pocket. Meanwhile James Mark, one of the three men in the wagon, went up to see what was taking Ms. Hill so long. Ignoring a warning from someone on the second floor that he "shouldn't be going up there," Mark proceeded to the apartment and rang the bell. When the door was opened, he saw Martin had pulled or was pulling something out of his pocket and, fearing that it was a knife or gun, turned to run. Martin shot Mark in the back. Mark survived, but is permanently paralyzed from the chest down. Immediately after the shooting, Martin came back into the living room and Hill asked, "Why did you shoot, why did you do it?" Martin, silent, turned and walked away. The police were called, and when they arrived, prior to any inquiry or investigation, Martin came forward with his hands up and said, "I shot him, don't shoot me," or words to that effect. That, in capsule form, was the prosecution's case.

Martin testified and admitted the shooting, claiming it was self-defense. According to him, he and Hill were having a fight when Hill tried to get out a knife. Just then Hill's daughter Kimberly opened the door, and Martin got his gun from under a pillow and went to the door and saw Mark, who said, "What the hell is going on?" When Martin replied, "Didn't I tell you not to come in my house?" Mark made a quick turning motion with his hand coming out of his pocket, and Martin, thinking Mark was armed, shot him.

1. Prosecutorial Misconduct.

In his closing remarks to the jury, the prosecutor made the following comments: "Another thing you can evaluate is whether a defendant made an inconsistent statement. Now usually that means a prior inconsistent statement. But I think in this case, it is important, because I am using the term 'inconsistent statement' in a broader sense. [¶] The Defendant, when he was accused by Stephanie Hill of shooting James Mark, for no reason at all, he made a very broad statement, a very inconsistent statement. [¶] Now Stephanie was not a police officer there to advise the Defendant he was under arrest and had a right to remain silent. She was the woman who lived with him. She said 'You shot him for nothing.' [¶] And the Defendant made a very eloquent statement, which was inconsistent with his innocence, he said nothing. He is not a man who does not speak, or is short of words. Nor did he say 'I shot

him to protect my house or to protect you or myself.' He said nothing. [¶] And he proceeded downstairs to hide the gun. [¶] He made another inconsistent statement that is very important. When Officer O'Brien arrived, the officer hadn't placed the Defendant under arrest, hadn't threatened him or asked him a question. Didn't know who he was. And the Defendant blurts out 'I shot him, don't shoot me.' [¶] But you never heard the Defendant blurt out 'I was trying to protect my family or myself.' [¶] So those statements, the statement of silence when he is accused, when an honest man who has been wronged would have protested and said 'I am innocent' —."

At this point Martin's counsel objected and asked the court to order a mistrial or to admonish the jury. The court refused both requests. Martin contends the prosecutor's remarks violated his rights under *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], and *Doyle* v. *Ohio* (1976) 426 U.S. 610 [49 L.Ed.2d 91, 96 S.Ct. 2240], and their progeny.

In *Griffin* the United States Supreme Court held that the Fifth Amendment precludes prosecutorial comment on the accused's failure to testify at trial: "[C]omment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice,' [citations], which the Fifth Amendment outlaws. It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." (380 U.S. at p. 614 [14 L.Ed.2d at pp. 109-110].) "The rationale of *Griffin* implicitly proscribes drawing an adverse inference to the defendant from his failure to reply to an accusatory statement if the defendant was asserting his constitutional privilege against self-incrimination." (*People* v. *Cockrell* (1965) 63 Cal.2d 659, 669-670 [47 Cal.Rptr. 788, 408 P.2d 116].) In *Cockrell*, the court found *Griffin* error in the admission of evidence that the defendant, after arrest and while in custody at the police station, remained silent when a police officer confronted him with an accusatory statement by a codefendant and asked what he had to say about "that." "[E]ven though it does not appear that Mr. Cockrell made any statement indicating that he was invoking his privilege against self-incrimination, he had a right to remain silent and an inference adverse to him may not be drawn from his silence." (*Id.*, at p. 670.) Similarly, comment by the prosecutor upon the defendant's failure to come forward after arrest and during custody with the alibi he asserted at trial has been held to constitute prosecutorial misconduct under *Griffin* and *Cockrell*. (*People* v. *Crawford* (1967) 253 Cal.App.2d 524, 536 [61 Cal.Rptr. 472].)

And in *In re Banks* (1971) 4 Cal.3d 337, 352 [93 Cal.Rptr. 591, 482 P.2d 215], our state Supreme Court held that the *Griffin-Cockrell* rationale precluded use of a defendant's silence in the face of accusations as adoptive admissions of guilt where the accusations were made by a police officer in the context of a search of the defendant's person at the scene of the crime.[1] The People argued in *Banks* that *Cockrell* should be limited to the "accusatory stage" of police investigations but the court, while expressing no opinion as to that argument, found that even if *Cockrell* were so limited it would apply to the facts of that case. "The accusatory stage is certainly reached 'after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' [Citation.] Petitioner may not have been formally arrested at the moment the police began to search him, but had been significantly deprived of his freedom of action." (4 Cal.3d at p. 352.)

In *Doyle* v. *Ohio, supra*, 426 U.S. 610, the United States Supreme Court applied a different rationale in addressing prosecutorial use of a defendant's silence. The defendants in that case testified and asserted that they had been framed. On cross-examination the prosecutor attempted to impeach them by asking why they had not told their frame-up story at the time they were arrested. The defendants had received *Miranda* warnings at the time of their arrest. The court reasoned that "[s]ilence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every postarrest silence is insolubly ambiguous because of what the State is required to advise the person arrested." (426 U.S. at p. 617 [49 L.Ed.2d at p. 97].) It held, therefore, that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." (*Id.,* at p. 619 [49 L.Ed.2d at p. 98]; see also *People* v. *Stewart* (1965) 236 Cal.App.2d 27, 31 [45 Cal.Rptr. 712].)

 These cases provide scant support for Martin's argument that it was error for the prosecutor to comment upon his silence in the face of

---

[1] In *Banks* the defendant was in a liquor store when police officers entered and the clerk told them the defendant had been acting suspiciously. The police officers told the clerk there had been some liquor store robberies that evening, and one of them told the defendant that he fit the robber's description and then began to search him. The defendant was silent during the few moments it took the officer to extract money from his pockets, and then protested he had worked for the money. At trial, the prosecutor commented on the defendant's silence; and in addition the trial court questioned the officer regarding his silence.

accusation by Ms. Hill. Since that accusation was by a private party acting independently of the police, the *Doyle* rationale based on *Miranda* has no application. ▮ As our Supreme Court recently said in *In re Eric J.* (1979) 25 Cal.3d 522 at page 527 [159 Cal.Rptr. 317, 601 P.2d 549]: "The procedural safeguards set forth in *Miranda* 'come into play only where "custodial interrogation" is involved, and by "custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."' (*People* v. *Fioritto* (1968) 68 Cal.2d 714, 718. . . .) 'A private citizen is not required to advise another individual of his rights before questioning him. Absent evidence of complicity on the part of law enforcement officials, the admissions or statements of a defendant to a private citizen infringe no constitutional guarantees.' (*People* v. *Mangiefico* (1972) 25 Cal.App.3d 1041, 1049. . ., citations omitted; see *People* v. *Price* (1965) 63 Cal.2d 370, 379. . . .)" ▮ Nor is there any basis for attributing Martin's silence in the face of Hill's accusation to his assertion of Fifth Amendment rights. In *People* v. *Preston* (1973) 9 Cal.3d 308 [107 Cal.Rptr. 300, 508 P.2d 300], the court held that the defendant's evasive response to certain extrajudicial out-of-custody statements by a codefendant which incriminated both of them was admissible as an adoptive admission, despite defendant's claim that the evidence violated his Fifth Amendment rights. The court stated: "If a person is accused of having committed a crime, under circumstances which fairly afford him an opportunity to hear, understand, and to reply, *and which do not lend themselves to an inference that he was relying on the right of silence guaranteed by the Fifth Amendment to the United States Constitution,* and he fails to speak, or he makes an evasive or equivocal reply, both the accusatory statement and the fact of silence or equivocation may be offered as an implied or adoptive admission of guilt. [Citations.]" (*Id.,* at pp. 313-314, italics added.) "Defendant urges that the admission of this evidence amounted to an improper comment upon his right to remain silent at the trial, in violation of *Griffin* v. *California* (1965) 380 U.S. 609. . .; and *People* v. *Cockrell* (1965) 63 Cal.2d 659. . . .There is nothing in *Griffin* or *Cockrell* which requires rejection of this evidence. ▮ Those cases proscribe drawing an inference adverse to a defendant from his failure to reply to an accusatory statement in a situation where failure to reply was based upon his constitutional right to remain silent. The Fifth Amendment privilege against self-incrimination does not on its face apply to commentary on defendant's nonassertive conduct prior to trial, *absent a showing that such conduct was in assertion of the privilege to remain silent.* (*People* v. *Wilson* (1965) 238 Cal.App.2d

447, 455-461 . . . .) No such showing was made here." (9 Cal.3d at p. 315, italics added.) ■■ These observations apply with equal force to the instant case. While Martin would distinguish *Preston* on the ground that the accusatory statement there was made a day after the crime, away from the scene, and in a relaxed environment, those facts are if anything more compatible with an inference of the exercise of Fifth Amendment rights than the facts involved here. (See also *People v. Edmondson* (1976) 62 Cal.App.3d 677, 681 [133 Cal.Rptr. 297].)

■ The prosecutor's abortive comment on Martin's failure to come forward with his self-defense explanation when confronted by the police officers presents a more difficult question. Arguably the *Doyle* rationale applies even where the defendant was not given *Miranda* warnings if the circumstances were such that *Miranda* warnings were due; some citizens, after all, are presumably aware of their constitutional rights without being told.[2] More broadly, *In re Banks, supra,* 4 Cal.3d 337, appears to hold that the *Cockrell* principle precludes commentary upon a defendant's silence at least where events have reached the point where the defendant has been "significantly deprived of his freedom of action" by the police. (4 Cal.3d at p. 352.) *People v. Galloway* (1979) 100 Cal. App.3d 551 [160 Cal.Rptr. 914]), recently decided by the Fifth District, may be viewed as an application of that principle. The court in that case held it was error for the prosecutor to question the defendant, and comment to the jury, concerning the defendant's failure to mention his alibi to "anyone" prior to the time he took the stand as a witness.

Here, however, the prosecutor's comment to the jury did not call into question a period of arguably ambiguous postarrest silence, but focused upon the situation as it existed the moment the police officers arrived and the defendant blurted out a statement to the effect that he had shot Mark. That statement was spontaneous, and prior to any inquiry or investigation. No objection was made to the introduction in evidence of that statement, and it does not appear that *Miranda* would have required its exclusion if objection had been made. (E.g., *People v. Mercer* (1967) 257 Cal.App.2d 244, 247-248 [64 Cal.Rptr. 861].) Moreover, Martin was not "silent" upon arrival of the police; he made an instant

---

[2] It has been suggested that the *Doyle* principle should be extended to preclude cross-examination with respect to *pre*-arrest silence as well, on the ground that such silence may also reflect the exercise of constitutional rights. (See Note, *Robeson v. State: Cross-Examination of Prearrest Silence* (1979) 67 Cal.L.Rev. 1205, criticizing a contrary holding by the Maryland Court of Appeal in *Robeson v. State* (1978) 39 Md.App. 365, [386 A.2d 795].) We find it unnecessary to reach that question here.

confession of having shot the victim, and the question posed by the prosecutor to the jury was why he did not at the same time assert that he did so in self-defense. The strength of the inference suggested by the prosecutor may well be debatable (cf. *United States* v. *Hale* (1975) 422 U.S. 171 [45 L.Ed.2d 99, 95 S.Ct. 2133]), but in terms of the constitutional argument advanced by Martin the ultimate criterion governing the propriety of prosecutorial comment upon a defendant's silence is whether the facts lend themselves to an inference that the defendant may be relying upon the right of silence guaranteed by the Fifth Amendment (*People* v. *Preston, supra*, 9 Cal.3d 308), and by that criterion Martin's argument fails.

We conclude, therefore, that under the particular circumstances of this case the prosecutor's comments to the jury did not constitute misconduct depriving defendant of any constitutional rights.

### 2. Instructional Errors.

The trial court read the jury standard CALJIC instructions on reasonable doubt. (CALJIC No. 2.90.) Martin requested that the following special instruction also be read: "In considering whether a reasonable doubt exists, you should take the following factors into consideration: [¶] Any evidence relating to whether the defendant resides in a dangerous neighborhood; [¶] Any evidence relating to whether James Mark said anything to the defendant; [¶] Any evidence relating to whether James Mark had his hands in his pockets; [¶] Any evidence relating to whether James Mark turned and started to take his hands out of his pockets." The trial court refused, noting that the instruction includes only a "small portion of the number of factors that may be considered." ■ Martin contends that the court committed reversible error when it refused to give the requested instruction or "any similar instruction."

Martin relies primarily on *People* v. *Sears* (1970) 2 Cal.3d 180 [84 Cal.Rptr. 711, 465 P.2d 847], a murder case in which the defendant requested an instruction relating circumstantial evidence to the questions of premeditation and reasonable doubt. The *Sears* court observed that a defendant upon proper request "has a right to an instruction that directs attention to evidence from a consideration of which a reasonable doubt of his guilt could be engendered." (*Id.*, at p. 190.) This court and

others, however, have rejected a broad interpretation of *Sears*.[3] "'None of the cases cited in *Sears* says, and *Sears* itself does not say, that upon request the judge must direct the attention of the jury to specific testimony and tell the jury it may look to that testimony for the purpose of forming a reasonable doubt on an issue.'" (*People v. Castellano, supra,* 79 Cal.App.3d at p. 858.) Here, as discussed below, the trial court gave an instruction relating evidence of self-defense to reasonable doubt in general terms. Martin's requested instruction, by contrast, refers to specific and disputed evidence. "[I]nstructions which are argumentative and call upon the jury to consider specific evidence concerning which there was a factual dispute should not be given.... The proposed instruction constitutes nothing more than a comment on the evidence." (*People v. Watson, supra,* 89 Cal.App.3d at pp. 386-387.) We find no error in the trial court's refusal to deliver it.

■ The trial court read the jury standard CALJIC instructions on self-defense, including CALJIC Nos. 5.52, 9.07 and 5.55. Martin contends it was error to give these instructions because they were unsupported by pertinent evidence. (*People v. Hannon* (1977) 19 Cal.3d 588, 597 [138 Cal.Rptr. 885, 564 P.2d 1203].) We disagree. CALJIC No. 5.52 reads: "The right of self-defense exists only as long as the real or apparent threatened danger continues to exist. When such danger ceases to appear to exist, the right to use force in self-defense ends." This instruction was clearly warranted by the evidence that the victim was shot in the back. CALJIC No. 9.07 reads: "No words of abuse, insult or reproach addressed to a person or uttered concerning him, howsoever insulting or objectionable the words may be, if unaccompanied by any threat or apparent threat of great bodily injury or any assault upon the person or trespass against lands or goods, will justify him in an assault with a deadly weapon, and the provocation only of such words will not constitute a defense to a charge of having committed any assault." This instruction was an appropriate means of advising the jury that Mark's purported words and actions would not

---

[3]See *People v. Hernandez* (1971) 18 Cal.App.3d 651, 660 [96 Cal.Rptr. 71]; *People v. Whittaker* (1974) 41 Cal.App.3d 303, 307-308 [115 Cal.Rptr. 845]; *People v. Castellano* (1978) 79 Cal.App.3d 844, 852-859 [145 Cal.Rptr. 264]; *People v. Rocha* (1978) 80 Cal.App.3d 972, 979-980 [146 Cal.Rptr. 81]; and *People v. Watson* (1979) 89 Cal.App.3d 376, 386-387 [152 Cal.Rptr. 471].

The conviction in *Sears* was reversed on grounds unrelated to the instructions. The court found the requested instruction "defective in form' but noted for the trial court's guidance that "the courts of this state have often approved instructions pointing out the relevance of certain kinds of evidence to a specific issue." (2 Cal.3d at p. 190.) "The 'certain kinds' of evidence referred to, patently does not refer to selected testimony of particular witnesses." (*People v. Whittaker, supra,* 41 Cal.App.3d at p. 308.)

suffice to establish Martin's claim of self-defense unless the jury believed that Martin was faced with an apparent threat of great bodily harm under the circumstances. Finally, CALJIC No. 5.55 reads: "The right of self-defense is not available to a person who seeks a quarrel with the intent to create a real or apparent necessity of exercising self-defense." The propriety of this instruction is less clear, but supportable on the basis that the jury might have concluded that Martin was seeking a quarrel with Mark. In any event, we are satisfied from the record that even had this instruction not been given, it is not reasonably probable that a verdict more favorable to Martin would have resulted. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

■ Martin proposed a special instruction on self-defense, but the trial court adopted only a portion of it. Martin contends that the trial court erred in refusing to give the entire instruction. The instruction as proposed by Martin, with the deleted portion underlined, is as follows: "The defendant has presented evidence showing that he acted in self-defense. *He has no burden of proof to sustain this position. The burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense. You must be satisfied beyond a reasonable doubt that the defendant did not act in self-defense.* If, from the circumstances of this case, you have a reasonable doubt whether defendant was acting in self-defense, you must give the defendant the benefit of the doubt and find him not guilty." The trial court found the underlined language confusing, and we agree. It is also redundant, in light of the standard instruction on reasonable doubt. Repetitive instructions need not be given (*People* v. *Rocha, supra,* 80 Cal.App.3d at p. 980, and cases cited therein); and the instruction as modified correctly stated the law (*People* v. *Sanchez* (1947) 30 Cal.2d 560, 571 [184 P.2d 673]). We find no error in the deletions.

Affirmed.

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied March 7, 1980, and appellant's petition for a hearing by the Supreme Court was denied April 3, 1980.