[No. D001356. Fourth Dist., Div. One. Apr. 15, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS GASTON FRYE et al., Defendants and Appellants.

**COUNSEL**

William J. Nickerson, Jr., and Joan T. Anyon, under appointments by the Court of Appeal, Brown, Nolan & Nickerson and Frank & Milchen for Defendants and Appellants.

John K. Van de Kamp, Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**LEWIS, J.**\*—Thomas Gaston Frye and Kim Leffingwell appeal their jointly tried burglary convictions (Pen. Code, § 459). Both contend no substantial evidence supports the judgment. Leffingwell also asserts the court improperly (1) excluded as hearsay his postarrest statement to the arresting officer and (2) refused his proposed jury instruction. Frye additionally asserts prosecutorial misconduct during his own cross-examination.

About 1:15 a.m., Nancy R. saw two men standing beside her neighbor Doray's home. Twenty minutes later, Nancy R. saw a shadow move across Doray's bedroom window. Nancy R., suspicious because Doray's home had been unoccupied for over 11 months, called police.

Police arrived within five minutes. Officer Henderson saw Frye beside the house. Seeing Henderson, Frye ran to the rear, meeting Officer Winter stationed in the backyard. Frye turned back toward Henderson who ordered

---

\*Assigned by the Chairperson of the Judicial Council.

Frye to "freeze." Frye complied. Searching Frye, Henderson found a flashlight and large hunting knife. Immediately after Henderson yelled "freeze," Leffingwell ran out the back door of the house. Winter arrested Leffingwell, finding a flashlight and a small buck knife on his possession. Police did not find any stolen property or burglar tools.

Doray's home was ransacked. John Craig, Doray's son, had inspected the house three days earlier and found everything in order at that time. Now, however, each room had been disturbed. Several pieces of furniture were missing; dishes were neatly stacked in boxes near the door; kitchen chairs were neatly stacked on each other, ready to be carried away.

Frye and Leffingwell admit their presence at Doray's Lemon Grove home. However, Frye testified[1] he and Leffingwell were not there to steal but to sleep. Munz, a friend of Frye, testified he told Frye about a place to sleep, an unoccupied house in Lemon Grove. Munz himself had previously slept there. Munz said he told Frye the house could be identified because it was behind the Horseshoe Tavern and there was a brown, rusty old car in front. Frye testified a brown old car was parked in front of Doray's house that night. Frye explained he and Leffingwell approached Doray's house by mistake, thinking it was the house Munz had described. The house Munz described, however, is across the street from Doray's house.

In rebuttal, Nancy R. testified only a blue car was parked in front of Doray's house that night. She further stated an old brown car was parked across the street. Officer Winter testified no brown car was parked at Doray's house that night.

The court sentenced Leffingwell to prison for the two-year midterm plus one year for a prior prison term (Pen. Code, § 667.5, subd. (b)). The court sentenced Frye to prison for the two-year midterm, suspended execution of sentence, placing him on three years probation.

I

■ Leffingwell contends no substantial evidence supports a finding he entered Doray's home with the intent to steal. ■ Frye, asserting the jury convicted him as an aider and abettor, contends no substantial evidence shows he knowingly and intentionally aided Leffingwell. ■ Deciding these issues, we review the entire record in the light most favorable to the judgment to determine whether a reasonable jury could find guilt beyond a

---

[1]Leffingwell did not testify.

reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

■ Although the People must show Leffingwell entered Doray's home with the intent to steal, such intent may be inferred from all the facts and circumstances. (See *People* v. *Sullivan* (1969) 271 Cal.App.2d 531, 543 [77 Cal.Rptr. 25] [circumstantial evidence of intent where no theft committed].)
■ Here, substantial evidence supports Leffingwell's conviction. Leffingwell made an unauthorized entry into a vacant home at 1 a.m. After a police officer yelled "freeze," Leffingwell ran out the back door. The late hour and sudden flight upon discovery support the inference Leffingwell entered with the intent to steal. (See *People* v. *Lamica* (1969) 274 Cal.App.2d 640, 644 [79 Cal.Rptr. 491].) Moreover, Leffingwell had a knife and flashlight at the time of arrest. A knife, although not a sophisticated burglary tool, has purposes consistent with entering a vacant home to steal. Leffingwell's possessing a flashlight is inconsistent with the story he was looking for a place to sleep at an occupied home. Henderson testified the exterior of Doray's house was well-lighted.

Nevertheless, Leffingwell asserts the jury could not reasonably find an intent to steal because he did not possess burglar tools or stolen property. Moreover, Leffingwell contends he could not have been the person who ransacked Doray's home, stacked chairs, and boxed dishes because he was inside only 20 minutes. However, any degree of improbability of Leffingwell's ransacking and gathering property in 25 minutes is not determinative of his intent when he entered. Leffingwell's flight after Henderson yelled "freeze" shows Leffingwell was unexpectedly interrupted. Under these circumstances, his failure to take property with him before flight is not inconsistent with the verdict. The jury could disbelieve Leffingwell's story that he entered the unoccupied home to sleep. Munz testified he told Frye and Leffingwell they could sleep at the house with the old brown rusty car parked in front. Munz, who described Doray's home as one frequented by transients, was impeached by the contradictory statements of Nancy R. who had been watching Doray's home for some time. Nancy R. and Winter testified no old brown car was parked in front of Doray's home. The brown car was parked across the street. The jury disbelieved Leffingwell's story, and substantial evidence supports the judgment because a reasonable trier of fact could find Leffingwell guilty beyond a reasonable doubt. (*People* v. *Johnson, supra,* 26 Cal.3d 557, 579.)

■ There is no evidence Frye entered Doray's home. Therefore, the court instructed the jury about aider and abettor liability. Asserting he mistook Doray's home for the sleeping house Munz described and that he did

not know of Leffingwell's entry or purpose, Frye contends no substantial evidence supports his conviction.

■ To convict Frye as an aider and abettor, the People must show he aided Leffingwell with knowledge of his criminal purpose and with the intent or purpose to commit or assist in committing the underlying burglary. (*People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318].) ■ Substantial evidence supports Frye's conviction. As discussed above, the jury was entitled to and did disbelieve Frye's story. Moreover, Frye was outside Doray's home when Henderson arrived. Seeing Henderson, Frye ran to the backyard where Leffingwell could be warned. Henderson found a flashlight and a knife when he arrested Frye. The jury could reasonably find from these facts that Frye was a lookout while Leffingwell inventoried the vacant home. Further, Frye drove to the house, parking his car in an alley behind a garage. Officer Oakley, familiar with this Lemon Grove area, testified there is no direct access from Frye's car to Doray's house. The jury could reasonably infer that contrary to Frye's testimony, he did not intend to announce his presence at an occupied sleeping house. Instead, Frye tried to conceal his presence at a house he intended to burglarize.

## II

Frye testified in his own behalf. At the end of the People's cross-examination, and not responding to any question, Frye declared, "I do have a reputation more or less with people that know me, that if they leave something in their car and I'm working on their car and there's some stuff in their car, they don't have to worry about it." The following questioning occurred:

"Q. You have a reputation about property, you mean folks don't have to worry about that?

"A. About taking other people's belongings.

"Q. And you never had that problem in the past before?

"A. No, never have, not any time in my life.

"Q. And you sure of that, Mr. Frye?

"A. Yes, Ma'am.

"Q. May I have a moment, Your Honor?" Apparently, at this point the District Attorney began looking through some papers. The following questioning continued:

"Q. Does burglary relate to other people's property, Mr. Frye?

"A. Pardon me?

"Q. Does burglary relate to other people's property?

"A. Yes, it does.

"Q. Mr. Frye, anything else you would like to tell us before I finish?

"A. No, Ma'am, not really."

■ Asserting this questioning improperly insinuated he had a prior burglary conviction,[2] Frye sought a mistrial for prosecutorial misconduct. The court denied the motion.

Regardless of the propriety of counsel's questioning,[3] any error did not prejudice Frye. The court, hearing and seeing the events, believed the only fair inference was counsel had no information about Frye's criminal history. The court stated: "If you are going to speculate about what somebody would—what inference they would draw, it would be that they didn't have anything. If she did, she certainly would have asked." Frye did not ask the court to admonish the jury not to draw an inference from counsel's questioning. Because the court reasonably concluded counsel's conduct did not impermissibly impeach Frye, there is no reversible error.

### III

Winter arrested Leffingwell. At the preliminary examination, Winter testified he transported Leffingwell to the Lemon Grove police station. There, Leffingwell told Winter he had "heard about this house" and he had been inside "for about 15 minutes looking around."

At trial, Winter testified for the People. To prove he did not enter Doray's house with an intent to steal, Leffingwell asked Winter on cross-examination to repeat the statement Leffingwell told Winter at the police station. The court sustained the People's hearsay objection. Unsuccessfully arguing the statement was nonhearsay circumstantial evidence of his state of mind, Leffingwell also argued the statement was admissible as a spontaneous declaration. The court ruled the statement was inadmissible hearsay. ■ Now,

---

[2] The probation report shows Frye has no prior theft-related conviction.
[3] See *People* v. *Wagner* (1975) 13 Cal.3d 612, 619 [119 Cal.Rptr. 457, 532 P.2d 105].

on appeal, Leffingwell argues the statement was admissible to rebut a charge of recent fabrication.[4]

Leffingwell offered this statement "to prove his state of mind." At this time in the trial, the People had not made any charge of recent fabrication. Leffingwell at this point had not testified, ultimately *did* not, and his personal version of the events was not in evidence, so there was nothing to be regarded as a recent fabrication. Prior consistent statements of a witness, ordinarily inadmissible, may be received to rebut a charge of "recent fabrication." (Evid. Code, § 791.) Leffingwell was not a witness. There is no statutory or precedential support for the idea a prior hearsay statement by Leffingwell is admissible to buttress the anticipated testimony of Frye and Munz. ■ Finally, Leffingwell cannot urge, on appeal, grounds of admissibility which were not presented to the trial court. (*Taliaferro* v. *Crola* (1957) 152 Cal.App.2d 448, 450 [313 P.2d 136].) ■ Therefore, we consider whether the court properly excluded the statement offered to prove state of mind.

Evidence of a declarant's statement is not hearsay if it relates facts other than declarant's state of mind and is offered to circumstantially prove the declarant's state of mind. (1 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 1.5, p. 67.) However, a statement is hearsay if it directly asserts the declarant's state of mind and is offered to prove the declarant's state of mind. (See *People* v. *Cruz* (1968) 264 Cal.App.2d 350, 356-358 [70 Cal.Rptr. 603]; Evid. Code, § 1200, subd. (a).) Such a hearsay statement is admissible only if it falls within an exception to the hearsay rule. (Evid. Code, § 1200, subd. (b).)

Here, Leffingwell's statement he entered to "look around" is a direct statement of his intent. Paraphrasing, Leffingwell told police he entered "to look," not to steal. Because offered for the truth of the matter stated, it is hearsay.

Leffingwell made the statement at the police station after his arrest. Therefore, the offered statement is one declaring his previously existing state of mind—his state of mind at the time he entered Doray's home. Where, as here, the declarant's (Leffingwell's) past state of mind is in issue, such a statement of past state of mind is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness. (Evid. Code, § 1251.) However,

---

[4]During Frye's case-in-chief, Munz testified he told Frye and Leffingwell about the sleeping house. On cross-examination, the People tried to show Munz, Frye and Leffingwell fabricated this explanation after Frye's and Leffingwell's arrests. Leffingwell asserts because he said he had "heard about this house" shortly after his arrest, his statement rebuts the People's charge of recent fabrication.

if the declarant's statement is made under circumstances indicating a lack of trustworthiness, the statement must be excluded. (Evid. Code, §§ 1251, 1252.)

Here, Leffingwell did not present this theory to the trial court, instead arguing the statement was nonhearsay or, if hearsay, a spontaneous declaration. (Evid. Code, § 1240.) There was no showing Leffingwell's declaration was made while he was under stress of excitement. The court properly rejected the spontaneous statement argument. ▮ ▮ ▮ ▮ The statement was hearsay, but the court did not determine Leffingwell's unavailability[5] or whether circumstances showed the statement trustworthy.[6] ▮ Even if Leffingwell had properly requested such findings, and assuming the court erroneously excluded the statement, any error would be harmless. The probative value of "I was looking around" to show a lack of intent to steal is slight. The statement is ambiguous, permitting a contrary inference that Leffingwell was "looking around" for something to steal. Leffingwell did not tell Winter he was looking for a place to sleep. Moreover, Leffingwell's theory explaining his presence inside Doray's home reached the jury through Munz' and Frye's testimony. Therefore, even if the court improperly excluded his statement, any error did not prejudice Leffingwell. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## IV

▮ Leffingwell contends the court should not have refused to give the following instruction: "If you find that the defendant Leffingwell formed the specific intent to steal, take or carry away the personal property of another after he entered the structure, but did not have said specific intent when he entered it, then you cannot find him guilty of burglary." The court refused to give this instruction, stating "I am refusing this instruction as being covered by the other instructions." Citing *People* v. *Sears* (1970) 2 Cal.3d 180 [84 Cal.Rptr. 711, 465 P.2d 847], Leffingwell contends he has a right to direct the jury's attention to the underlying issue of intent.

Although Leffingwell is entitled to instructions directing the jury's attention to evidence showing reasonable doubt of his guilt (*People* v. *Sears, supra,* 2 Cal.3d 180, 190), when the jury is properly instructed, the court

---

[5] A witness claiming a valid privilege not to testify is unavailable. (See *People* v. *Smith* (1970) 13 Cal.App.3d 897, 902 [91 Cal.Rptr. 786, 52 A.L.R.3d 875]; 1 Jefferson, Cal. Evidence Benchbook, *supra,* § 2.5, p. 129.) Whether this allows a defendant to get his own out-of-court hearsay statements in evidence is not addressed by *Smith,* and dicta in *People* v. *Cruz, supra,* 264 Cal.App.2d 350, 356-357, footnote 6, indicates the defendant cannot "manufacture" his own unavailability.

[6] See *People* v. *Cruz* (1968) 264 Cal.App.2d 350, 357 [70 Cal.Rptr. 603].

need not restate legal principles merely in another manner. (*People* v. *Anderson* (1966) 64 Cal.2d 633, 641 [51 Cal.Rptr. 238, 414 P.2d 366].)

Here, the court properly instructed the jury regarding the required intent to convict Leffingwell of burglary. The court stated: "The crime of burglary requires at the time of the entry of a building the specific intent to steal . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Every person who enters any building with the specific intent to steal . . . is guilty of the crime of burglary.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"In order to prove the commission of the crime of burglary, each of the following elements must be proved:

"1. That a person entered a building;

"2. That at the time of the entry such person had the specific intent to steal. . . ."

These instructions lucidly and repetitively cover the issue. The court properly refused Leffingwell's proposed instruction on an issue covered by other instructions. (See *People* v. *Slocum* (1975) 52 Cal.App.3d 867, 893 [125 Cal.Rptr. 442].) Leffingwell's repetitive instruction need not have been given. (See *People* v. *Martin* (1980) 101 Cal.App.3d 1000, 1011 [162 Cal.Rptr. 133].)

Judgment affirmed.

Butler, Acting P. J., and Lester, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.