Filed 9/1/16  P. v. Bowe CA4/1

Exhibits not available electronically

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TREVOR JUSTIN BOWE,<br><br>    Defendant and Appellant. | D068404<br><br><br>(Super. Ct. No. SCS274395) |

APPEAL from a judgment of the Superior Court of San Diego County, Joseph Brannigan, Judge.  Reversed in part, remanded for further proceedings.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry J. Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

Defendant Trevor Justin Bowe appeals after being convicted of unlawfully driving a vehicle in violation of Vehicle Code section 10851, subdivision (a).[1] Bowe rented a vehicle for a day and did not return the vehicle when it was due; he was stopped when he attempted to enter the United States from Mexico approximately six weeks after renting the vehicle.

Bowe contends that his conviction must be reversed on the grounds that (1) the trial court erred in excluding as hearsay evidence in the form of e-mail communications between the rental car agency's representatives and Bowe regarding the rental vehicle; (2) the prosecutor committed prejudicial misconduct by arguing to the jury that there was no evidence that Bowe had attempted to contact the rental agency about extending the term of the rental, despite being aware of the existence of the e-mail communications that the court excluded; and (3) the trial court erred in failing to instruct the jury on the defense of mistake of fact. Bowe also contends that the trial court's true finding on a prior prison term enhancement allegation must be vacated because there is insufficient evidence that Bowe did not remain free from custody for a five-year period prior to the current offense.

We conclude that the trial court erred in excluding e-mail messages contained in an exhibit proffered by Bowe on the ground that the statements in the e-mails constituted

---

[1] Bowe was also convicted of a separate count of failing to appear while on bail, but he does not challenge this conviction.

inadmissible hearsay, and that the court's exclusion of the statements in these e-mails prejudiced Bowe. The prejudice that resulted from the exclusion of the e-mail communications was exacerbated by the prosecutor's remarks implying that no such evidence existed and the trial court's failure to instruct the jury on the mistake of fact defense. Finally, the court's true finding on the prior prison term allegation must be vacated because, as the People concede, the evidence is insufficient to support the finding. We therefore reverse Bowe's conviction for unlawfully driving a vehicle, vacate the court's true finding on the prior prison term allegation, and remand the matter to the trial court to allow the People to retry Bowe with respect to the substantive offense and the prior prison term enhancement allegation, if they so elect.

II

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

On July 2, 2014, Bowe entered into a one-day car rental contract at an Avis Rental Car (Avis) branch located at the San Diego International Airport. Bowe rented a Lincoln Navigator that had a value of approximately $60,000. Bowe was considered a preferred customer with Avis, which meant that his driver's license information and credit card information were on file with the company. Testimony at trial established that as a preferred customer, Bowe could have proceeded directly to his reserved car without having to check-in at the office counter.

3

Prior to leaving the Avis branch with the rental car that day, Bowe provided Avis with a credit card. Avis provided Bowe with a copy of the rental contract.[2] The contract listed the return date as July 3, 2014.

Bowe did not return the car on the return date. At some point in time, the matter was referred to Avis's loss prevention agents. On August 21, 2014, Avis reported the car stolen.

Five days later, on August 26, 2014, Bowe attempted to drive the Lincoln Navigator from Mexico into the United States. At the border, there is a camera system that checks the license plates of vehicles entering the United States and notifies border patrol agents if a car with those license plates has been reported stolen. When Bowe reached the border, this system notified the border patrol that the Lincoln that Bowe was driving had been reported stolen.

Bowe was detained by a border patrol agent. He provided the agent with his driver's license and said that he had rented the vehicle from Hertz, and that he had been in possession of the vehicle for approximately a month and a half. Bowe did not have the rental contract with him. He told the agent that he had been at a medical facility in Mexico, and that he was on his way to a hospital in San Diego. The agent directed Bowe to proceed to the secondary inspection area. Local police later arrived and placed Bowe under arrest.

---

[2] An Avis representative who testified at trial indicated that rental contracts may be placed inside of cars reserved for preferred customers, or they may be printed out at the gate for these customers. The witness also indicated that a customer's credit card could be "swiped" either at the office counter or at the exit gate.

B. *Procedural background*

Bowe was charged with one count of unlawful driving of a vehicle (Veh. Code, § 10851, subd. (a); count 1); one count of receiving a stolen vehicle (Pen. Code, § 496d;[3] count 2); and one count of failing to appear while on bail (§ 1320.5; count 3).[4] The information further alleged that Bowe had suffered a prior conviction for vehicle theft (§ 666.5, subd. (a)), and had served three prior prison terms (§ 667.5, subd. (b)).

Before trial, the trial court granted Bowe's motion to sever count 3 and the prior conviction allegations from counts 1 and 2. Bowe waived his right to a jury trial with respect to count 3 and the enhancement allegations.

A jury convicted Bowe on count 1 and, therefore, as instructed, did not render a verdict with respect to count 2, a necessarily included offense of count 1. The trial court convicted Bowe of failing to appear while on bail as charged in count 3, and found true one prison prior (§§ 667.5, subd. (b), 668).

The trial court sentenced Bowe to a term of four years in state prison. The court suspended execution of two years of the sentence, and placed Bowe on mandatory supervision for that portion of his sentence. (§ 1170, subd. (h)(5).)

---

[3] All further statutory references are to the Penal Code unless otherwise indicated.

[4] Count 3 arose from events that occurred after Bowe was arrested for unlawfully possessing the rental car. Bowe was released on bail on August 28, 2014, and had an arraignment hearing set for September 4, 2014. Bowe failed to appear on September 4, 2014. Bowe later said that he had been bedridden on September 4, 2014, as a result of multiple sclerosis. Approximately a week after Bowe failed to appear, he contacted the district attorney's office and the bail bond company, and eventually cleared the warrant that had been issued. He ultimately appeared for arraignment on March 18, 2015. Bowe does not raise any challenge to the judgment with respect to count 3.

Bowe filed a timely notice of appeal.

## III

## DISCUSSION

A. *The trial court erred in excluding, as hearsay, the entirety of the e-mail communications between Bowe and Avis representatives since portions of the e-mail communications were admissible as nonhearsay*

1. *Standards*

Trial court evidentiary rulings are reviewed under the abuse of discretion standard. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.)  A party may establish an abuse of discretion by showing that a trial court's ruling resulted from a misapplication of the law, the principle being that a court cannot properly exercise its discretion when it does not correctly apply the governing ground rules.  (See *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297-1298.)  " '[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.' "  (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977.)

A party's claim of error regarding an evidentiary ruling is reviewed in light of the constitutional requirement that no judgment may be reversed on appeal unless the party complaining demonstrates a miscarriage of justice, i.e., prejudice.  (Cal. Const., art. VI, § 13; see, e.g., *Easterby v. Clark* (2009) 171 Cal.App.4th 772, 783.)  Prejudice in this context refers to a situation in which a reviewing court finds that it is reasonably probable, based on the entire record, that the appellant would have achieved a more

favorable result in the absence of the error.  (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801-802.)

2. *Additional background*

Prior to trial, Bowe moved to admit e-mail communications between himself and Avis representatives, as well as e-mail communications between various Avis representatives, concerning Bowe's rental from Avis, which Avis produced to the defense pursuant to a subpoena.  Essentially, Bowe sought to admit "e-mail chains," which included an original e-mail from an Avis representative to Bowe, his response to that e-mail and, then, where the "e-mail chains" diverged, two different responses from Avis representatives to him, as well as "forwards" of the e-mails internally to other Avis representatives.  The exhibit that Bowe sought to admit, comprised of printouts of various e-mails produced by Avis to Bowe, is represented in Appendix A to this opinion.  The relevant statements from the proffered exhibit are the following:

(1) On Tuesday, July 8, 2014, at 9:19 p.m., "Andrea.Richards@avisbudget.com" sent a message to "[XXXX].com" with the subject heading "Your Avis Rental."  The message stated,

> "RE:  Rental Agreement:  221700754  [¶]  Our records indicate that TREVOR BOWE rented an Avis vehicle from SAN DIEGO INT'L AIRPORT on 02JUL14.  The car was due for return on 03JUL14 and is not currently showing in our inventory.  Please contact me today with the status of your rental."

The message then provided additional details about the make and model of the vehicle, the license plate information, rental agreement information, and other administrative details.

7

(2) On Tuesday, July 8, 2014, at 11:58 p.m., "[XXXX].com " replied to the e-mail address "Andrea.Richards@avisbudget.com."  The message stated,

> "Hello, I had called last Wednesday and requested to extend my rental for one week at the weekly rate and that I may possibly need the vehicle for an additional week as well, and that I would advise if that was the case.  I also provided a different card number to be charged and asked for that card to be added to my profile, which does not seem to have been done as a [*sic*] your company has attempted numerous times to charge my old card that I had reported lost.  The card number that you should have on my profile is [XXXXXXXXXXXX[5]]1126 exp 01/17 with sec code of [XXX]."

(3) The following day, Wednesday, July 9, 2014, at 10:11 a.m., "Richards, Andrea" wrote the following to " 'Trevor Bowe' ":

> "Hi,  [¶]  Thank you for your reply.  At this time I am unable to process your request.  The credit card on file is not granting the authorization needed to extend your rental.  Please contact me at 866-477-6913 ext 2508 so we can discuss some other alternate options or go to the nearest Avis location with an alternate card. Thank you for choosing Avis Rent-A-Car." [6]

---

[5]     The exhibit shows an e-mail message that contains a full credit card number and security code.  We have elected not to include that information in this opinion.  We have redacted this same information from the image of the e-mail message contained in Appendix A.

[6]     These e-mail messages were apparently forwarded by "Richards, Andrea" to "Patrick, Daniel" and "Roberts, Jenilia," who were also included in Richards's initial e-mail to Bowe.  In that e-mail, both were shown to have "avisbudget.com" e-mail addresses.

(4) Later that night (Wednesday, July 9, 2014) at 9:24 p.m., "Williams, Mark" wrote to " 'Trevor Bowe' " and copied "Patrick, Daniel; Roberts, Jenilia," with a forward of the message that "[XXXXXXXX].com " had sent, together with the following message:

> "Hi,  [¶]  Thank you for your reply.  I have forwarded your e-mail to the next level who will address the issues listed below.  I apologize if this has caused you any inconvenience.  [¶]  Regards,  [¶]  Mark Williams  [¶]  Avis Budget group. . . ."[7]

Mark Williams then forwarded the e-mail chain to additional Avis representatives, commenting that Bowe had mentioned the credit card details in his e-mail.  In addition, Andrea Richards appears to have forwarded the e-mail chain in which she told Bowe that "the credit card on file is not granting the authorization needed to extend your rental," to another Avis representative named Daniel Patrick.

Defense counsel argued that the e-mail chains were admissible as nonhearsay, including being "probative of whether Avis properly reported the car stolen," and as to the effect that the e-mail exchange had on Bowe.  Defense counsel also argued that the e-mail chains were admissible under exceptions to the hearsay rule, including the business record exception, as well as the state of mind exception.

The prosecutor argued that Bowe was attempting to offer the statements in the e-mail chains for their truth, and that they therefore constituted hearsay.  She further argued that the two hearsay exceptions that defense counsel raised did not apply.  The prosecutor

---

[7]    Multiple copies of various portions of the e-mail message chains were included in the exhibit.  In one copy of the message from "Mark Williams" to Bowe, the signature line under "Mark Williams" says "Avis Budget," and not "Avis Budget group."

specifically noted that the business record exception could not apply to the contents of statements made in the e-mails, even if the e-mails themselves were considered business records, and also argued that in order for the state of mind exception to apply, the statements would have to have been made under circumstances indicating their truthfulness.

The trial court ultimately ruled that it would exclude all evidence of the e-mail chains, indicating the court's belief that any nonhearsay purpose of the evidence would not be relevant to "any issue." The court also rejected the suggestion that the statements in the e-mails were admissible under the business records exception to the hearsay rule, and indicated its belief that the statements were not trustworthy. Although the court appears to have considered the trustworthiness aspect of the statements only with respect to the business records exception, the court ultimately excluded the exhibit, thereby implicitly concluding that the state of mind exception to the hearsay rule also did not apply.

3. *Analysis*

Bowe contends that the statements in these e-mail chains were admissible for nonhearsay purposes. He further contends that the content was admissible under three different exceptions to the hearsay rule. As we explain, we conclude that the statements in the e-mails that Bowe identifies on appeal were admissible for nonhearsay purposes,

and should have been admitted at trial.[8]  Because we conclude that the trial court erred in analyzing the admissibility of Bowe's proffered exhibit, we also consider whether the exclusion of this evidence was prejudicial, requiring reversal of Bowe's conviction on count 1.

a. *Portions of the communications contained in the e-mail chains were admissible for a nonhearsay purpose*

Evidence offered to prove the existence of a fact can include a writing, which can consist of recordings or transmissions by electronic mail (e-mail).  (Evid. Code, § 250.)  However, "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated" is hearsay evidence, and is generally not admissible.  (Evid. Code, § 1200.)  There are, however, several well-established exceptions to this rule, many of which are codified in the Evidence Code.

In addition, out-of-court statements may be admitted for a nonhearsay purpose— i.e., to establish something other than the truth of the matter asserted in the statement.  (*People v. Hill* (1992) 3 Cal.4th 959, 987, overruled on different grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)  For example, a statement may be offered as background material to help explain the defendant's "state of mind and conduct"; a statement introduced for such a purpose would not be hearsay.  (*Ibid.*)

---

8    The transcript of the proceedings demonstrates that the prosecutor did not object to the admissibility of defense counsel's proffered exhibit on the grounds of lack of authentication or foundation.

11

" ' "[O]ne important category of nonhearsay evidence [is] evidence of a declarant's statement that is offered to prove that the statement imparted certain information to the hearer and that the hearer, believing such information to be true, acted in conformity with that belief. The statement is not hearsay, since it is the hearer's reaction to the statement that is the relevant fact sought to be proved, not the truth of the matter asserted in the statement." ' " (*People v. Livingston* (2012) 53 Cal.4th 1145, 1162.) As long as the nonhearsay purpose is relevant to an issue in dispute, the proffered statement is admissible. (*People v. Turner* (1994) 8 Cal.4th 137, 189, overruled on another ground in *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5.)

The statements in the e-mails sent by Avis representatives to Bowe were offered to prove that the statements imparted certain information to Bowe and, that Bowe, believing the information to be true, acted in conformity with that belief. For example, Bowe offered the statement in the first e-mail from Avis representative Andrea Richards to Bowe indicating that the vehicle had not been returned on the date it was scheduled to be returned, to demonstrate the effect that the statement had on Bowe, not to establish its truth (i.e., that the vehicle had in fact not been returned to Avis). Specifically, this e-mail message was offered to show that Bowe acted in conformity with his belief about the truth of those statements when he responded to the e-mail. The statements in the e-mail were admissible to demonstrate that Bowe had been made aware that Avis believed that the car was overdue, and could explain Bowe's subsequent actions in responding to the Avis representative's e-mail.

12

Richards's second e-mail message was admissible to demonstrate its effect on Bowe, as well. Significantly, in neither Richards's first nor second message did she request that Bowe return the vehicle to Avis immediately. More importantly, the statement made by Avis representative Mark Williams in his e-mail to Bowe—i.e., "Thank you for your reply. I have forwarded your e-mail to the next level who will address the issues listed below. I apologize if this has caused you any inconvenience"— was not offered to demonstrate that Williams actually felt gratitude to Bowe for replying, that he had actually forwarded Bowe's e-mail to someone else, that the person to whom Bowe's e-mail was forwarded did address the "issues listed below," or that Williams was sorry about the possibility that Bowe had been inconvenienced. Rather, the statement was offered to demonstrate that Bowe, as the recipient of the message, may have believed those things to be true and, as a result, may have believed that his rental car situation had been sufficiently resolved. The statement was also relevant to explain Bowe's conduct subsequent to this communication. Indeed, even though Andrea Richards had sent Bowe an e-mail message apparently indicating that she was having a problem extending the rental for Bowe, Williams sent his e-mail message to Bowe *after* Richards had sent her response to Bowe. This timeline may have suggested to Bowe that he did not have to be concerned with Richards's second e-mail, and that Williams was now working with more senior representatives to address the rental extension issue.[9] In addition, Williams's

---

[9]     Richards's second e-mail to Bowe was itself ambiguous. Richards stated, "At this time I am unable to process your request. The credit card on file is not granting the authorization needed to extend your rental." However, Richards did not make clear

13

message also did not indicate to Bowe that he should return the vehicle immediately. Based on the statements made and the timing of the e-mails, a reasonable person could have concluded that, as a result of these communications, any problem with the rental had been, or was in the process of being, resolved. As offered for the effect that the statements had on Bowe, the statements were *not* hearsay.

Further, Bowe's statements in response to Richards's initial e-mail were admissible for the nonhearsay purpose of placing Mark Williams's statement to Bowe *in context*. (See *People v. Harris* (2005) 37 Cal.4th 310, 335 [statements offered to give context to other statements not offered for hearsay purpose]; see also Evid. Code, § 356 ["when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence"].) Specifically, Bowe's statements were admissible to explain the remarks that Williams made in response to Bowe's statements, and did not require that the statements Bowe made in the e-mail be admitted for their truth. Bowe proffered the statements not solely to establish the truth of the matters asserted, i.e., that he had actually called the Wednesday before he sent the e-mail, that he had requested to extend the rental, that he had provided a different credit card number, that Avis representatives kept trying to charge his old card, that he had reported that card lost, or that the card number now on file was the one that Bowe identified in his e-mail. Rather, he offered the statements also for a nonhearsay purpose, i.e., to provide context for the e-mail

whether the credit card "on file" was Bowe's original credit card, or whether the file had been updated with the new credit card number that Bowe had provided in his e-mail, such that it was the new credit card number that would not permit a charge to be authorized.

14

communications from Avis and, in particular, to explain why Williams responded to Bowe in the manner in which he did.

All of the statements in question were clearly relevant to the issues in the case. The existence and content of these e-mail communications were extremely probative as to whether Bowe had the intent "to permanently or temporarily deprive the owner [of the vehicle] of his or her title to or possession of the vehicle." (Veh. Code, § 10851, subd. (a).) If the jury believed that Bowe *understood* Williams's e-mail to be suggesting that Avis was processing an extension of the term of Bowe's rental and was apologizing for having caused him any inconvenience with respect to the payment issues, the jury might have had a reasonable doubt as to whether Bowe had the intent to permanently or temporarily deprive Avis of its title to or possession of the rental vehicle, as required to establish the offense charged in count 1.

The trial court thus should have admitted for nonhearsay purposes at least these identified portions of the e-mail chains between Bowe and Avis representatives. The court erred in concluding that all of the statements in the e-mail chains were inadmissible hearsay.

          b. *The court's erroneous exclusion of certain statements made in the e-mail chains was prejudicial*

The evidence against Bowe was not overwhelming. Essentially, the evidence consisted of the fact that he reserved a one-day rental, he did not return the car on the scheduled return date and, six weeks later, he was detained when he attempted to drive the car from Mexico back to the United States, after Avis had reported the car stolen. It

15

appears that the credit card that Bowe used for the initial rental was valid and that he was charged for at least the single day rental, since the evidence demonstrated that someone had physically "swiped" Bowe's credit card before he left the Avis lot with the vehicle. There was no evidence presented as to whether Avis could have run the card that Bowe initially provided to Avis with additional charges after the original contract term had expired.

Further, the rental car contract provided information regarding not only the daily rental rate, but also the weekly rate, suggesting that Avis might be open to extending the rental car contract if the customer was inclined to do so, and possibly indicating to Bowe that an extension at the weekly rate was available to him. In addition, there was testimony that customers may extend their rentals over the telephone, and customers are able to contact customer service representatives by e-mail. Although the Avis witness had "never seen . . . [an] extension by e-mail," his testimony did not indicate that an extension could not be effectuated through e-mail.

Much of the other evidence presented at trial was also ambiguous with respect to Bowe's guilt. For example, there was much made at trial of the fact that Bowe attempted to drive the vehicle across the border into the United States. As Bowe's attorney argued, however, if Bowe's intention was to keep the car *without* paying to rent it and, thus, to essentially steal the car from Avis, his decision to return to the United States in the car made little sense, given the level of scrutiny that law enforcement places on vehicles entering the United States and, specifically, the fact that license plates on all vehicles are screened during entry. The existence of the e-mail exchanges between Avis and Bowe

16

could have been used to support the defense's contention that Bowe believed he had extended his rental contract, and that this is why he was seemingly unconcerned about driving the rental vehicle through a border crossing where there was a heavy law enforcement presence.[10]

Further, there was no evidence as to whether Avis did, in fact, attempt to charge either the credit card that Bowe had placed on file with Avis originally, or any other credit card belonging to Bowe that he may have otherwise provided to Avis, for any of the additional time that Bowe possessed the vehicle. With respect to the original card on file with Avis, the sole Avis witness called by the prosecution stated that he had not attempted to charge Bowe's card, and he was not aware whether anyone else, including anyone in the loss prevention department, had attempted to charge the card.

Given the sparse record as to what occurred between Bowe and Avis during the period between when Bowe left with the vehicle and when he was detained at the border crossing, the evidence of the e-mail exchanges between Avis representatives and Bowe was relevant and probative of the issues in the case—particularly Bowe's intent. Again, as we have explained, the e-mail exchanges could reasonably be viewed as suggesting to Bowe that he had sufficiently provided Avis with credit card details in order to maintain

_____

[10]    The prosecutor also appeared to place emphasis on the fact that Bowe told the border patrol agent that he had rented the car from "Hertz Rent A Car," and not Avis. In closing argument, she told the jury that Bowe had "lied to the officer." However, this evidence has limited relevance in the analysis as to Bowe's guilt. First, the border patrol agent was testifying from memory as to what Bowe had said, not from a contemporaneously prepared report. Further, even if Bowe said that he had rented the vehicle from Hertz, Bowe did not attempt to suggest that the car was his but, instead, truthfully indicated that the vehicle was a rental vehicle.

the rental for an extended period of time. This belief would have negated the existence of the intent required to establish his guilt as to the count on which he was convicted. The trial court's exclusion of the e-mail chains left the jury with the misimpression that there had been no communication between Bowe and Avis representatives. In light of the relatively meager evidence of Bowe's guilt, it is reasonably probable that Bowe would have achieved a more favorable result if the court had properly admitted certain of the e-mail evidence for a nonhearsay purpose.

In addition, the other asserted errors that Bowe raises on appeal increased the prejudice resulting from the trial court's exclusion of the e-mail communications between Bowe and Avis representatives. Specifically, the prejudice that Bowe suffered as a result of the exclusion of any reference to these e-mail communications was compounded by the prosecutor's noting in closing argument the absence of any evidence that Bowe had attempted to resolve this issue with Avis. Although the prosecutor's comments may have been technically accurate, given the state of the record as a result of the trial court's ruling excluding all evidence related to the e-mails, those comments served to highlight the absence of the evidence that we have concluded was improperly excluded, and in fact capitalized on the apparent lack of such evidence.

The trial court's exclusion of this evidence led to another problem. Bowe asserts that the trial court erred in failing to instruct the jury on the defense of mistake of fact.[11]

---

[11] The instruction on mistake of fact that Bowe requested provides:

"The defendant is not guilty of ____ *<insert crime[s]>* if (he/she) did not have the intent or mental state required to commit

18

If the trial court had properly admitted the statements in the e-mail chains, the trial court would have also been obligated to instruct the jury as to Bowe's defense of mistake of fact, since there would have been sufficient evidence in the record to support the giving of that instruction. The court's failure to instruct the jury on the mistake of fact defense further increased the prejudice that Bowe suffered as a result of the court's evidentiary ruling. Specifically, evidence of Mark Williams's statement to Bowe, " Hi,  [¶]  Thank you for your reply. I have forwarded your e-mail to the next level who will address the issues listed below. I apologize if this has caused you any inconvenience," is evidence from which a reasonable fact finder could have concluded that Bowe was under the misimpression that he had extended the term of his rental and that Avis was going to charge the credit card that he provided, or might have caused the jury to have reasonable doubt as to whether Bowe harbored the requisite criminal intent when he retained the vehicle after the initial return date. It is at least reasonably probable that if the jury had been provided with the e-mail evidence, such that the prosecutor would not have been able to assert to the jury that there was *no* evidence that Bowe had ever contacted Avis, and if the court had properly instructed the jury on the defense of mistake of fact, Bowe would have achieved a more favorable result in this case. In essence, we conclude that the trial court's error in excluding those portions of the e-mail chains that we have

the crime because (he/she) [reasonably] did not know a fact or [reasonably and] mistakenly believed a fact.

"If the defendant's conduct would have been lawful under the facts as (he/she) [reasonably] believed them to be, (he/she) did not commit _____ <insert crime[s]>."  (CALCRIM No. 3406.)

19

identified as admissible for nonhearsay purposes significantly prejudiced Bowe.  We therefore reverse Bowe's conviction on count 1.[12]

B.  *The trial court properly declined to admit the statements in the e-mail chains for their truth*

Bowe also argues on appeal that some portions of the statements in the e-mail chains were admissible for their truth under at least one of three possible exceptions to the hearsay rule.  Specifically, Bowe asserts that the statements were admissible as (1) business records, pursuant to Evidence Code section 1271, (2) statements that revealed the sender's state of mind, pursuant to Evidence Code section 1250, and (3) contemporaneous statements, pursuant to Evidence Code section 1241.  Because the case might be retried, we address Bowe's hearsay exception contentions and conclude that the statements in the e-mail chains are not admissible under any of the identified exceptions.

---

[12]    The trial court did not exclude the statements we discuss in this section pursuant to Evidence Code section 352, although it did exclude a final e-mail message from one Avis representative to another about Bowe's rental under Evidence Code section 352, on the ground that without additional context, this e-mail message would confuse the jury.  In our review of the record, we have found no express objection by the prosecutor to the admission of the entirety of the e-mail chains on Evidence Code section 352 grounds, and it does not appear that the court excluded the remainder of the statements in the e-mail chains pursuant to Evidence Code section 352.  Therefore, the trial court's ruling excluding the statements made by Richards, Bowe, and Williams in e-mail messages cannot be affirmed on the ground that the court properly excluded them pursuant to Evidence Code section 352.  Further, we question whether exclusion of such highly relevant and probative evidence would have been reasonable under the balancing test of Evidence Code section 352 if the court had properly considered the evidence to be admissible as nonhearsay.

First, we conclude that the trial court properly rejected the proffer that most of the statements in the e-mail chains were admissible pursuant to the business records exception to the hearsay rule. Evidence Code section 1271 provides:

> "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if:
>
> "(a) The writing was made in the regular course of a business;
>
> "(b) The writing was made at or near the time of the act, condition, or event;
>
> "(c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and
>
> "(d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

The trial court properly concluded that the e-mail messages are not writings "made in the regular course of business." (Evid. Code, § 1271, subd. (a).) The Law Revision Commission comment to the business records exception (Evid. Code, § 1271) states: " 'The chief foundation of the special reliability of business records is the requirement that they must be based upon the first-hand observation of someone whose job it is to know the facts recorded. . . . But if the evidence in the particular case discloses that the record was not based upon the report of an informant having the business duty to observe and report, then the record is not admissible under this exception, to show the truth of the matter reported to the recorder.' [Citations.] [¶] Applying this standard, the cases have rejected a variety of business records on the ground that they were not based on the personal knowledge of the recorder or of someone with a business duty to report to the

21

recorder. Police accident and arrest reports are usually held inadmissible because they are based on the narrations of persons who have no business duty to report to the police."

Under this theory of the special reliability of business records, the only relevant message that could have qualified as a business record and, thus, have been admitted for its truth is Andrea Richards's initial e-mail message to Bowe. As long as Richards's job was "to know the facts recorded," i.e., to know that a vehicle rented by a particular customer had not been returned to Avis on the date on which it was due pursuant to Avis's contract with the customer, this message could qualify as a business record. However, this e-mail, alone, would not have done much to assist Bowe's defense, since it would have served only to demonstrate that Bowe was aware that his rental was overdue and that Avis was looking to have the vehicle returned. Thus, it is not surprising that Bowe was attempting to admit for their truth his *own* statements in response to Richards's e-mail. However, the statements in Bowe's e-mail response to Richards's e-mail do not constitute a writing made by Avis in the regular course of its business; rather, the statements constitute a writing made by Bowe and retained by Avis. Such statements do not meet the requirements of the business records exception. (See, e.g., *Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1205 [records of 911 calls could not be admitted for truth of statements made in calls because individuals who telephoned the Los Angeles Police Department "were not under a duty to accurately

22

report information"].) Thus, Bowe's statements in his e-mail message to Richards were not admissible pursuant to the business records exception.[13]

Bowe further argues that his statements in response to Andrea Richards's e-mail in which she indicated that his rental car had not been returned on the date it was due to be returned could have been admitted pursuant to the state of mind exception found in Evidence Code section 1250. Evidence Code section 1250 provides: "(a) Subject to Section 1252, evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health) is not made inadmissible by the hearsay rule when: [¶] (1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action; or [¶] (2) The evidence is offered to prove or explain acts or conduct of the declarant. [¶] (b) This section does not make admissible evidence of a statement of memory or belief to prove the fact remembered or believed." Evidence Code section 1252 precludes the admission of such a statement for its truth if it was made under circumstances that indicate a lack of trustworthiness. As the trial court determined, even if Bowe's

---

[13] With respect to Mark Williams's response to Bowe's e-mail, it does not appear that Bowe sought to admit Williams's e-mail for the truth of the matter asserted in it. Again, as we have explained, the reason Williams's statements were relevant and probative is not because Williams might have been thankful to Bowe for replying to Richards's e-mail, or because he forwarded Bowe's e-mail to someone more senior to him, or because he felt apologetic for possibly causing Bowe some inconvenience. Whether these facts were true was irrelevant to determining whether Bowe was guilty of the charged offenses. What was relevant to the case was any effect that such statements may have had on Bowe.

23

statements in response to Richards's inquiry about his failure to return the rental vehicle could be considered to be statements reflecting Bowe's then-existing state of mind, these statements were made under circumstances that indicate a lack of trustworthiness. Specifically, Bowe had time to consider what his response should be, and could have fabricated a story to attempt to prevent Avis from quickly determining that he intended to keep the car without paying for it.

Finally, Bowe contends that the statements in the e-mail chains were admissible under the contemporaneous statements exception, codified in Evidence Code section 1241, to explain "that appellant remained in possession of the car because he believed that his rental agreement had been extended." He further contends that "Avis's e-mails explained their acts with respect to the rented car," and suggests that the e-mails demonstrate that Avis's agents "made a mistake by reporting the car stolen."

"Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Is offered to explain, qualify, or make understandable conduct of the declarant; and [¶] (b) Was made while the declarant was engaged in such conduct." (Evid. Code, § 1241.) "[W]here a person's conduct or act is relevant but is equivocal or ambiguous, the statements accompanying it may be admitted to explain and make the conduct or act understandable." (Assem. Com. on Judiciary com., 29B pt. 4 West's Ann. Evid. Code (2015 ed.) foll. § 1241, p. 397.) To the extent that Bowe's arguments to the

24

trial court sufficiently raised this ground as a basis for the admission of the e-mail evidence, we are not convinced that this exception is applicable in this case.[14]

First, although Bowe contends that the statements made by Avis representatives in the e-mail chains were admissible under this exception to explain that Avis representatives somehow made a mistake in reporting the car stolen, the question whether Avis was mistaken in reporting the car stolen was not relevant to the main issue at trial, which was whether *Bowe* had the requisite intent or knowledge to be found guilty of the offenses charged in either count 1 or count 2.  Further, with respect to Bowe's own statement regarding the actions he had taken and his intent to extend his rental contract, we reject the suggestion that any statement made during an ongoing course of conduct that lasts for weeks can be considered to be a "contemporaneous" statement, admissible for its truth in order to explain that ongoing conduct under this exception.  "A hearsay statement is admissible if it comes within one of the established exceptions to the hearsay rule *under the reasoning there are inherent traditional indicia of reliability ensuring the trustworthiness of the statement*."  (*People v. Rios* (1985) 163 Cal.App.3d 852, 863, italics added.)  Although the contemporaneous statement exception does not include the

---

14     Bowe did not expressly raise this ground for admission of the e-mail chains for their truth in the trial court.  Generally, a party may not, for the first time on appeal, argue grounds of admissibility not presented to the trial court.  (*People v. Frye* (1985) 166 Cal.App.3d 941, 950.)  Bowe contends on appeal that defense counsel sufficiently informed the trial court of the substance of his theories of the admissibility of this evidence—i.e., that the e-mail chains could demonstrate why Bowe retained the car, and that this was sufficient to notify the court of this theory of admissibility.  In the alternative, he contends that any forfeiture of this theory of admissibility amounted to the ineffective assistance of counsel.  We therefore consider Bowe's contentions on the merits.

explicit requirement that the statement at issue be made under circumstances indicating its trustworthiness, a truly contemporaneous statement generally does involve inherent indicia of reliability, simply by its nature as a statement that emerged contemporaneously with the conduct that the statement is being offered to explain. Such indicia of reliability do not exist, however, where, as here, Bowe had the opportunity to fashion less than truthful statements, given the length of time that he was in possession of the vehicle. (See *People v. Costa* (1953) 40 Cal.2d 160, 168 [" 'Declarations, to be a part of the *res gestae*, are not required to be precisely concurrent in point of time with the principal fact, if they spring out of the principal transaction, if they tend to explain it, are voluntary and spontaneous, and are made at a time so near it as to preclude the idea of deliberate design, then they are to be regarded as contemporaneous, and are admissible.' "].) Bowe's statement in his e-mail to Richards lacks any assurances of trustworthiness that would support its admission, despite the hearsay rule. We therefore reject the contention that Bowe's e-mail message was admissible as a contemporaneous statement.

C. *The People concede that the true finding on the prison prior enhancement must be vacated, and the matter remanded for a new trial*

Bowe contends that the true finding on the single prior prison term allegation found true by the court must be vacated because there is insufficient evidence that Bowe did not remain free from custody for a period of five years prior to committing the current offense.

Bowe waived his right to a jury trial on the prison prior enhancement allegations against him. The prosecutor informed the court that although three prison prior terms

26

were alleged in the information, "it appears there is only one prison prior," due to the fact that the prior convictions had resulted in concurrent sentences. The prosecutor sought to amend the charging document to allege only a single prison prior allegation.

After placing Bowe under oath, the trial court asked Bowe whether he would admit that he had suffered three prior convictions, all of which "constitute one and only one prison prior because they all ran concurrent." Bowe admitted that he had suffered these convictions. However, Bowe did not admit that he had served a prison term for any of the convictions, nor did he admit that he had failed to remain out of custody for five years after completing the prison term.

In order for a court to impose a sentencing enhancement for a prison prior pursuant to section 667.5, the People must prove that the defendant was convicted of the prior felony, was imprisoned as a result of that conviction, completed the term of imprisonment, and failed to remain free for five years from prison custody and/or from the commission of a new offense that results in a felony conviction. (*People v. Tenner* (1993) 6 Cal.4th 559, 563.) The People agree with Bowe that, based on the record, there is insufficient evidence to support the trial court's true finding on the prison prior allegation. Specifically, there is no evidence establishing that Bowe served a prior prison term for any of the felonies he admitted having suffered, or that he failed to remain free from custody or committing a new felony for a period of five years.

We accept the People's concession and conclude that the trial court's true finding with respect to the allegation that Bowe suffered a prior prison term conviction must be vacated for lack of sufficient evidence to support the finding. We therefore remand this

27

matter, as well, for a retrial of the prior prison term allegation. (See *Monge v. California* (1998) 524 U.S. 721, 734 [prohibition against double jeopardy does not preclude retrial on a prior conviction allegation in noncapital sentencing context]; *People v. Barragan* (2004) 32 Cal.4th 236, 243-245 [due process requirement of fundamental fairness not violated by retrial of sentencing enhancement].)

## IV

## DISPOSITION

Bowe's conviction on count 1 is reversed. The trial court's true finding with respect to the enhancement allegation that Bowe suffered a prior prison sentence conviction is vacated. Because Bowe does not challenge his conviction on count 3, his conviction on that count is affirmed.

The matter is remanded to the trial court for further proceedings.  The People may elect to retry Bowe with respect to counts 1 and/or 2, as well as on the sentencing enhancement allegation.  Alternatively, the People may elect to have the trial court resentence Bowe on the remaining conviction without retrial.


AARON, J.

WE CONCUR:


HALLER, Acting P. J.


McDONALD, J.

29

# Appendix A

(Exhibits not available electronically)